Robert BRACHE and Edna Franza, Plaintiffs,

v.

COUNTY OF WESTCHESTER, Alfred Del Bello, Kenneth Hale, Samuel S. Yasgur, Thomas Delaney, Jerome Herlihy and Terrence Shames, Defendants.

80 Civ. 4228–CSH.

United States District Court, S. D. New York.

Jan. 28, 1981.

Gerald B. Lefcourt, New York City, for plaintiffs; Richard Ware Levitt and Randye S. Retkin, New York City, of counsel.

Samuel S. Yasgur, Westchester County Atty., White Plains, N. Y., for defendants, Del Bello, Hale & Delaney; Jonathan Lovett, Deputy County Atty., Jane Bilus Gould, Asst. County Atty., New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Plaintiff Robert Brache owns a retail store, designated a "boutique," called the Elephant's Trunk, in Mount Kisco, Westchester County, New York State. Plaintiff Edna Franza owns the East of the Sun Boutique in Scarsdale, Westchester County. They commenced this action to challenge Local Law No. 5–1980, promulgated by the Westchester County Board of Legislators (hereinafter the "ordinance"), which amends Westchester's Consumer Protection Code to add a new Article IX entitled "Sale and Display of Drug Accessories." The defendants are the County, the county executive, and officials charged with the enforcement of county laws. Plaintiffs sought a declaration that the ordinance violated the United States Constitution in several respects; and also that Article 39 of the New York State General Business Law, effective July 30, 1980 and dealing with "Drug-Related Paraphernalia," preempted the field. Plaintiffs prayed for a preliminary and permanent injunction of the ordinance's enforcement.

This Court entered a temporary restraining order, and scheduled an evidentiary hearing on plaintiffs' request for a preliminary injunction. That hearing was consolidated with trial on the merits. Rule 65(a)(2), F.R.Civ.P. Defendants consented to a continuance of the restraining order pending decision, a voluntary maintenance of the *status quo* which the Court appreciates. The case has been tried, and ably briefed and argued. The following constitutes the Court's Findings of Fact and Conclusions of Law under Rule 52(a).

### I.

*The Ordinance*

The Westchester County ordinance provides as follows:

"ARTICLE IX—SALE AND DISPLAY OF DRUG ACCESSORIES

"Section 863.221. LEGISLATIVE FINDINGS. It is hereby declared and found that the sale of items used to aid the storage, use, concealment and test the strength or purity of illegal drugs is a widespread and growing practice which is contrary to the public interest. Many parent and teacher organizations, such as the New York State Congress of Parents and Teachers, as well

568

as Local P.T.A. groups have recognized the problem and have encouraged and endorsed legislation that would prohibit the sale of drug-related paraphernalia. Therefore, public safety, health, welfare and morals would be best served by discontinuing the sale of such items.

"Section 863.222. Definitions. a) The term 'drug paraphernalia' means all equipment products and materials of any kind which are used, intended for use, or desinged [sic] for use, in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of the laws of the State of New York. It includes, but is not limited to:

"1. Kits used, intended for use, or designed for use in planting, propagating, cultivating, growing or harvesting of any species of plant which is a controlled substance or from which a controlled substance can be derived;

"2. Kits used, intended for use, or designed for use in manufacturing, compounding, converting, producing, processing, or preparing controlled substances;

"3. Isomerization devices used, intended for use, or designed for use in increasing the potency of any species of plant which is a controlled substance;

"4. Testing equipment used, intended for use, or designed for use in identifying or in analyzing the strength, effectiveness or purity of controlled substances;

"5. Scales and balances used, intended for use, or designed for use in weighing or measuring controlled substances;

"6. Diluents and adulterants, such as quinine hydrochloride, mannitol, mannite, dextrose and lactose, used, intended for use, or designed for use in cutting controlled substances;

"7. Separation gins and sifters used, intended for use, or designed for use in removing twigs and seeds from, or in otherwise cleaning or refining marihuana;

"8. Blenders, bowls, containers, spoons and mixing devices used, intended for use, or designed for use in compounding controlled substances;

"9. Capsules, balloons, envelopes and other containers used, intended for use or designed for use in packaging small quantities of controlled substances;

"10. Containers and other objects used, intended for use, or designed for use in storing or concealing controlled substances;

"11. Hypodermic syringes, needles and other objects used, intended for use or designed for use in parenterally injected controlled substances in the human body;

"12. Objects used, intended for use, or designed for use in ingesting, inhaling, or otherwise introduced [sic] marihuana, cocaine, hashish, or hashish oil into the human body, such as:

"a. Metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes; with or without screens, permanent screens, hashish heads, or punctured metal bowls;

"b. Water pipes;

"c. Carburetion tubes and devices;

"d. Smoking and carburetion masks;

"e. Roach clips; meaning objects used to hold burning material such as marahuana [sic] cigarette, that has become too small or too short to be held in the hand;

"f. Miniature cocaine spoons and cocaine vials;

"g. Chamber pipes;

"h. Carburetor pipes;

"i. Electric pipes;

"j. Air-driven pipes;

"k. Chillums;

"l. Bongs;

"m. Ice pipes or chillers;

"13. 'Cocaine Spoon': A spoon with a bowl so small that the primary use for which it is reasonably adopted or designed is to hold or administer cocaine, and which is so small as to be unsuited for the typical, lawful uses of a spoon. A cocaine spoon may or may

not be labeled as a 'cocaine' spoon or 'coke' spoon.

"14. 'Marijuana or Hashish Pipe': A pipe characterized by a bowl which is so small that the primary use for which it is reasonably adopted or designed is the smoking of marijuana or hashish, rather than lawful smoking tobacco, and which may or may not be equipped with a screen.

"In determining whether an object is drug paraphernalia, a court or other authority should consider, in addition to all other logically relevant factors, the following:

"1. Statements by an owner or by anyone in control of the object concerning its use;

"2. Prior convictions, if any, of an owner, or of anyone in control of the object, under any State or Federal law relating to any controlled substance;

"3. The proximity of the object, in time and space, to a direct violation of this Act;

"4. The proximity of the object to controlled substances;

"5. The existence of any residue of controlled substances on the object;

"6. Direct or cirucmstantial [sic] evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons who he knows, or should reasonably know, intend to use the object to facilitate violation of this Act; the innocence of an owner, or of anyone in control of the object, as the direct violation of this Act should not prevent a finding that the object is intended for use, or designed for use as drug paraphernalia;

"7. Instructions, oral or written, provided with the object concerning its use;

"8. Descriptive materials accompanying the object which explain or depict its use;

"9. National and local advertising concerning its use;

"10. The manner in which the object is displayed for sale;

"11. Whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;

"12. Direct or circumstantial evidence of the ratio of sales of the object(s) to the total sales of the business enterprise;

"13. The existence and scope of legitimate uses for the object in the community;

"14. Expert testimony concerning its use.

"Section 863.223. SALE AND DISPLAY OF DRUG ACCESSORIES. It shall be a violation of this code for any merchant or other person to knowingly sell, offer for sale, or display any cocaine spoon, marijuana pipe, hashish pipe, or any other drug-related paraphernalia.

"Section 863.224. PENALTIES. Notwithstanding any provision in the Westchester County Charter, the Westchester County Administrative Code or any other local laws, a person who violates any provision of this article is guilty of a misdemeanor.

"Section 863.225. SEVERABILITY. If any clause, sentence, paragraph or part of this Local Law shall be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair or invalidate the remainder thereof, but shall be confined in its operation to the clause, sentence, paragraph, section or part thereof directly involved in the controversy and in which such judgement [sic] shall have been rendered.

"Section 863.226. EFFECTIVE DATE. This Local Law shall take effect on the sixtieth day after it shall have become a law."

Westchester's law is one of many recent state and local enactments aimed at drug paraphernalia. They are prompted by considerations summarized in the statement of United States Deputy Assistant Attorney General Irvin B. Nathan to the House of Representatives' Select Committee on Narcotics and Drug Abuse Control (November 1, 1979), concerning the Model State Drug Paraphernalia Act (the "Model Act") drafted by the Department of Justice:

"The Department of Justice recognizes the existence of an extensive industry in this country dealing in the manufacture and sale of implements for preparing and

using illicit drugs, primarily marijuana and cocaine. The products include 'roach clips,' water pipes, cocaine spoons and sophisticated kits used to test or process these drugs. We have been advised that total sales of these products amount to at least several hundred million dollars annually.

"The advertising, display and open sales of these implements, usually in so-called 'head shops' and often in conjunction with the sale of legitimate products promoted among adolescents, are an affront to the communities in which these shops exist because they appear to condone and even glamorize the use of illegal drugs. The attraction of such shops to minors is of particular concern to these communities. As a result, interested community groups have increasingly begun to demand governmental action to deal with the drug paraphernalia industry." Statement, p. 2.

These sentiments find expression in the legislative findings appearing at § 863.221 of the Westchester ordinance.

Store owners having reason to believe that they may be prosecuted under drug paraphernalia laws have challenged their constitutionality in a number of federal district courts, to whose ranks this Court is now added.

## II.

*Summary of Plaintiffs' Contentions*

Plaintiffs contend that the Westchester ordinance violates the United States Constitution in the following respects:

It is void for vagueness, in violation of the Due Process Clause of the Fourteenth Amendment.

It impermissibly restrains free speech, in contravention of the First and Fourteenth Amendments.

It is directed against a certain kind of store, and thus represents a bill of attainder subject to selective enforcement, in violation of the Equal Protection Clause of the Fourteenth Amendment, and the Bill of Attainder Clause in Article I, Section 9.

It contravenes the Equal Protection Clause because it is not rationally related to any legitimate legislative goal.

It lacks arrest and search standards, in violation of the Fourth Amendment.

It impermissibly burdens interstate commerce, in violation of the Commerce Clause, Article I, Section 8.

Plaintiffs' proof and arguments have focused upon the vagueness and equal protection theories.

In addition, as noted *supra*, plaintiffs alleged that the ordinance is preempted by a recently enacted state law. I deal with that contention first.

## III.

*Preemption*

■ The complaint alleged preemption of the Westchester ordinance by a state statute, but plaintiffs do not now urge it as a basis for invalidating the ordinance. While one cannot say that plaintiffs have abandoned preemption, they would clearly prefer a resolution of the constitutional issues. Nonetheless, the issue must be addressed. Federal district courts, in their evaluation of statutes, must avoid constitutional issues if other grounds exist for decision. *United States v. Batchelder*, 442 U.S. 114, 122, 99 S.Ct. 2198, 2203, 60 L.Ed.2d 755 (1979). Judge Elfvin of the Western District of New York observed that principle when, "in order to avoid unnecessary adjudication of constitutional issues," he considered *sua sponte* whether the state law in question herein preempted Erie County's local drug paraphernalia law. *Hoetzer v. County of Erie*, 497 F.Supp. 1207, at 1214 (W.D.N.Y., 1980). Having answered that question in the affirmative, Judge Elfvin did not reach the constitutional challenges to the Erie County law. If I reach the same conclusion with respect to the Westchester ordinance, I will not reach them either.

■ Judge Elfvin, citing New York cases, said that "[a] local law is preempted when the state has acted in a particular field and in so acting has evidenced an

intention to occupy entirely such field to the exclusion of local law." I agree with his articulation of the test, but respectfully disagree with the conclusion that the state law in question preempts local criminal laws aimed at drug paraphernalia.

The state law is Article 39 of the General Business Law, §§ 850–853, effective July 30, 1980. The full text is reproduced in the margin.[1] The statute is civil in nature. It declares the sale or possession with intent to sell of "drug-related paraphernalia," as defined in § 850, to be a "nuisance,"

§ 852(2), and forbids such possession or sale. § 851. Violators may lose their vending licenses or permits, § 852(1), have their goods forfeited, § 852(2), and be subjected to monetary "civil penalties," § 853, as well as an injunction against future violations. *Id.*

The Westchester ordinance is criminal in nature. Violation of its provisions constitutes a misdemeanor. § 863.224.

█ As Judge Elfvin observed in *Hoetzer, supra,* at 1215, under New York law the local county governments "have been dele-

[1] § 850:

"As used in this article, unless the context clearly requires otherwise, the following words or terms shall have the following meanings:

"1. 'Controlled substance' shall have the same meaning as defined in section three thousand three hundred two of the public health law.

"2. 'Drug-related paraphernalia' consists of the following objects used for the following purposes:

"(a) Kits, used or designed for the purpose of planting, propagating, cultivating, growing or harvesting of any species of plant which is a controlled substance or from which a controlled substance can be derived;

"(b) Kits, used or designed for the purpose of manufacturing, compounding, converting, producing, or preparing controlled substances;

"(c) Isomerization devices, used or designed for the purpose of increasing the potency of any species of plant which is a controlled substance;

"(d) Scales and balances, used or designed for the purpose of weighing or measuring controlled substances;

"(e) Diluents and adulterants, including but not limited to quinine hydrochloride, mannitol, mannite, dextrose and lactose, used or designed for the purpose of cutting controlled substances;

"(f) Separation gins, used or designed for the purpose of removing twigs and seeds in order to clean or refine marihuana;

"(g) Hypodermic syringes, needles and other objects, used or designed for the purpose of parenterally injecting controlled substances into the human body;

"(h) Objects, used or designed for the purpose of ingesting, inhaling, or otherwise introducing marihuana, cocaine, hashish, or hashish oil into the human body."

§ 851:

"It shall be a violation of this article for any person, firm or corporation to possess with intent to sell, offer for sale, or purchase drug-related paraphernalia under circumstances evincing knowledge that the paraphernalia is possessed, sold or purchased for one or more of the drug-related purposes stated in subdivision two of section eight hundred fifty of this article."

§ 852:

"1. A county, town, city or village which issues a license or permit authorizing any person, firm or corporation to engage in the selling or offering for sale of any merchandise may revoke such license or permit upon a finding, pursuant to a hearing held thereon, that such person, firm or corporation has sold or offered for sale merchandise in violation of this article.

"2. The possession with intent to sell or offering for sale of drug-related paraphernalia as defined herein is hereby declared to be a nuisance, and where any such drug-related paraphernalia shall be taken from the possession of any person, the same shall be surrendered and forfeited to the sheriff of the county wherein the same shall be taken, except that in a city having a population of seventy-five thousand or more, the same shall be surrendered and forfeited to the police commissioner or other head of the police force or department of said city and except that in the counties of Nassau and Suffolk, the same shall be surrendered and forfeited to the commissioner of the county police department."

§ 853:

"The attorney general or any state or local health officer, town, village or city attorney, or the chief executive officer of a municipality may institute an action in a court of competent jurisdiction to enjoin any activity prohibited pursuant to section eight hundred fifty-one of this chapter. If such court finds that any person, firm or corporation has sold or offered for sale any drug-related paraphernalia, it shall assess civil penalties against such person, firm or corporation in an amount not less than one thousand dollars nor more than ten thousand dollars for each such violation."

gated nearly the full measure of New York's police power." The police power extends to the enactment of legislation intended to curtail illicit drug use, *Robinson v. California*, 370 U.S. 660, 664, 82 S.Ct. 1417, 1419, 8 L.Ed.2d 758 (1962), which if properly drawn may prohibit the sale of drug-related devices. *Geiger v. City of Eagan*, 618 F.2d 26, 28 (8th Cir. 1980). Westchester has attempted such legislation in the case at bar. As we shall see, the Westchester ordinance, at least in its definitional provisions, is based upon the Model Act, a criminal statute drafted by the Justice Department to assist local governments confronted by constitutional challenges to their drug paraphernalia laws. The New York legislature could have adopted its own "model act," as indeed other states have done, *see, e. g., The Casbah, Inc. v. Thone, Governor of Nebraska*, No. 80–0–271 (D.Neb., Sept. 26, 1980). It chose instead to enact a civil statute, making available, *inter alia*, injunctive relief not found in the criminal law. But it does not follow that the legislature intended to preempt local governments from attempting to impose constitutional criminal sanctions, as the drafters of the Model Act encouraged them to do. As Judge Elfvin observes, the drafters of the state law noted "that local communities had passed ordinances relating to drug paraphernalia," *Hoetzer, supra*, at 1216; he infers from the statute's silence on those ordinances "an intent to make the state enactment the sole remedy." *Id.* at 1216. I draw the opposite inference. The new state law adds civil remedies to the criminal sanctions existing not only under local law, but state law as well;[2] I do not observe in the state's latest enactment an intent to withdraw from local governments their police power right to enact criminal laws addressing the serious drug paraphernalia problem. Surely the state law contains no express declaration of preemptive intent; and I decline to infer it in the circumstances.

Accordingly the plaintiffs' constitutional challenge to the ordinance must be considered.[3] I do so against the background of their commercial ventures as revealed by the evidence.

## IV.

### The Plaintiffs' Operations

Brache's boutique, the Elephant's Trunk, sells clothing, jewelry, and assorted gifts. A "smoking accessories" section, located upstairs, produces between 30% and 50% of the store's profits. No tobacco products are sold in the "smoking accessories" section. The stock consists of items which the evidence clearly shows are used primarily for smoking or ingestion of marijuana or cocaine (*e. g.*, bongs, toke-o-matic 20 bong hitters, marijuana test kits, Deering preparation kits, marygins, cocaine kits); and other items which may be used for licit or illicit purposes (*e. g.*, pipes, screens, clips, rolling papers, mirrors, small spoons). A

---

2. The New York Penal Law, § 220.50, provides: "A person is guilty of criminally using drug paraphernalia in the second degree when he knowingly possesses or sells:
 "1. Diluents, dilutants or adulterants, including but not limited to, any of the following: quinine hydrochloride, mannitol, mannite, lactos [sic] or dextrose, adapted for the dilution of narcotic drugs or stimulants under circumstances evincing and [sic] intent to use, or under circumstances evincing knowledge that some person intends to use, the same for purposes of unlawfully mixing, compounding, or otherwise preparing any narcotic drug or stimulant; or
 "2. Gelatine capsules, glassine envelopes or any other material suitable for the packaging of individual quantities of narcotic drugs or stimulants under circumstances evincing an intent to use, or under circumstances evincing knowledge that some person intends to use, the same for the purpose of unlawfully manufacturing, packaging or dispensing of any narcotic drug or stimulant.
 "Criminally using drug paraphernalia in the second degree is a class A misdemeanor."

3. Defendants do not urge the doctrine of abstention. The federal courts considering the constitutionality of drug paraphernalia laws uniformly reject the suggestion that they should abstain, for the reasons summarized in *Record Revolution No. 6, Inc. v. The City of Parma*, 638 F.2d 916, at 925–926, No. 80–3308 (6th Cir., Dec. 8, 1980). See also *High Ol' Times, Inc. v. Busbee*, 621 F.2d 135 (5th Cir. 1980).

number of the items are embossed with marijuana leaf designs. Copies of the Cocaine Consumers Handbook and Marijuana Growers Guide are available for purchase. Conversation between county undercover investigators and sales personnel at the Elephant's Trunk made it clear that the latter knew they were selling items intended for drug use.

The operations at Ms. Franza's boutique, East of the Sun, are comparable. The store sells combs, jewelry, wallets, leather bags, crystal, some clothing items, and other gifts. The "smoking accessories" section at the rear of the store stocks a combination of clearly drug-related items, and items which could be used with drugs or with other substances. Conversations between undercover investigators and East of the Sun sales personnel, including on one occasion plaintiff Franza herself, demonstrated the salespersons' awareness that the buyers wished to purchase drug paraphernalia.

Plaintiffs testified at trial, in essence, that they did not know where these items came from, what they were for, or to what purpose the purchasers would put them; their only purpose and concern was selling items, any items, for profit. I reject these *apologias* as unworthy of belief. The catalogues from which a number of the items were ordered proclaimed their efficacy in the drug culture. Certain of the items had no conceivable purpose other than the preparation or ingestion of drugs. The arrangement of the inventory and the conversations of the sales personnel manifested awareness that drug paraphernalia were being sold to drug users.

I find that both plaintiffs were knowingly selling certain items which unquestionably constituted "drug paraphernalia" to drug users; and that the Westchester ordinance would put them on notice, in respect of at least those items, that this was illegal.

## V.

*Plaintiffs' Standing to Raise the Constitutional Issues*

■ Defendants argue from the foregoing evidence that the plaintiffs' complaint must be dismissed. That is because, the argument runs, the constitutionality of the ordinance should be judged as applied to these plaintiffs, rather than on its face, and, as applied to them, the ordinance is valid.

I reject that argument. While plaintiffs' pre-trial affidavits demonstrated sufficient threats of prosecution to present an "actual controversy," *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), and the evidence at trial revealed the basis for the threats, the fact remains that no criminal prosecution under the preliminarily restrained ordinance has been commenced, against these plaintiffs or anyone else. That distinguishes the case at bar from *Ulster County Court v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), and *United States v. Herrera*, 584 F.2d 1137 (2d Cir. 1978), cited by defendants for the proposition that I should not consider the facial validity of the ordinance. In *Allen* and *Herrera* the defendants sought to attack the facial validity of the statutes pursuant to which they had been indicted, tried and convicted. "As a general rule," the *Allen* Court stated, "if there is no constitutional defect in the application of the statute to a litigant, he does not have standing to argue that it would be unconstitutional if applied to third-parties in hypothetical situations." 442 U.S. at 155, 99 S.Ct. at 2223. However, in the absence of "a formal, factual development as to the actual practices of enforcement," at least in respect of the litigants, an insufficient basis exists for adjudicating validity as applied. *Hejira Corp. v. MacFarlane*, Crim.Action No. 80–F–824 (D.Colo., Sept. 15, 1980) (oral opinion at Tr. 9).

Furthermore, while I have found that plaintiffs could have learned from the ordinance that the sale of certain items was prohibited, substantial constitutional questions arise from the ordinance in its entirety. I address those questions *infra*. The present point is that the evidence does not foreclose plaintiffs from professing uncertainty as to the full range of commercial activity that the ordinance forbids. That

issue arises from the face of the ordinance, and facial analysis is appropriate. I agree with Judge Coffrin's analysis, relied upon by plaintiffs, in *Goguen v. Smith*, 471 F.2d 88, 92 (1st Cir. 1972), aff'd, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974):

"... if the nature of a party's conduct is not so dissimilar from other behavior sought to be proscribed by a statute, such that an interpretation distinguishing his behavior from that of others would not provide more certain notice to potential offenders and would also seem unwarranted in the light of a legislative determination to cover all such activities, then a void-for-vagueness challenge allows a court to rule on the facial constitutionality of that statute."

The ordinance at bar is intended to apply to all retailers of drug paraphernalia. There is no reason to suppose that the marketing operations of these particular plaintiffs are dissimilar "from other behavior sought to be proscribed." All the drug paraphernalia cases from other districts to which I have been cited consider the facial validity of the statutes or ordinances at issue except *Tobacco Road v. City of Novi*, 490 F.Supp. 537 (E.D.Mich., 1979). To the extent that *Novi* requires a different analysis, I decline to follow it.

Accordingly, I turn to plaintiffs' constitutional challenge to the face of the Westchester ordinance.

## VI.

*Vagueness*

The requirement that statutes not be vague is grounded in the concept of due process. In *Grayned v. Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–2299, 33 L.Ed.2d 222 (1972), the Supreme Court stated generally:

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined.

Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." (footnotes omitted).

■ Drug paraphernalia laws are frequently attacked for impermissible vagueness. Some laws have been declared unconstitutional,[4] and others held valid.[5] Two dominant themes emerge from the cases: (i) whether the definition of "drug paraphernalia" is too vague; and (ii) if so, whether that vagueness is remedied by the law's further requirements of knowledge or intent. The second inquiry is pertinent because an ascertainable standard of guilt, sufficient to give fair notice to the offender and adequate guidelines to enforcement agencies, may be achieved through specific *mens rea* or *scienter* requirements. That is to say, a statute otherwise void for vagueness may be saved by inclusion of a specific *mens rea* as an element of the crime. *United States v. International Minerals and Chemical Corp.*, 402 U.S. 558, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971); *United States v. National Dairy Products Corp.*, 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963); *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 72 S.Ct. 329, 96 L.Ed. 367 (1952); *Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); *United States v. Ragen*, 314 U.S. 513, 62 S.Ct. 374, 86 L.Ed. 383 (1942); *Gorin v. United States*,

4. See, e. g., *Knoedler v. Roxbury Township*, 485 F.Supp. 990 (D.N.J.1980); *Weingart v. Town of Oyster Bay*, No. 79 C–2932 (E.D.N.Y., Dec. 17, 1979).

5. See, e. g., *Tobacco Road v. City of Novi*, 490 F.Supp. 537 (E.D.Mich., 1979); *The Flipside, Hoffman Estates, Inc. v. Village of Hoffman Estates*, 485 F.Supp. 400 (N.D.Ill.1980).

312 U.S. 19, 61 S.Ct. 429, 85 L.Ed. 488 (1941); *Omaechevarria v. Idaho*, 246 U.S. 343, 38 S.Ct. 323, 62 L.Ed. 763 (1918). The statute need not use the word "intent"; knowledge, if required as an element of the crime, is construed as the equivalent of intent. *Boyce Motor Lines, supra*, 342 U.S. at 342, 72 S.Ct. at 331: "The statute punishes only those who *knowingly* violate the Regulation. This requirement of presence of culpable intent does much to destroy any force in the argument that application of the Regulation would be so unfair that it must be held invalid."

The drafters of the Model Act were well aware of the potentially saving grace of knowledge and intent requirements. Deputy Assistant Attorney General Nathan, addressing the House Committee, summarized the problem at p. 3 of his statement:

"The states which have passed comprehensive paraphernalia legislation, however, have found themselves under continual constitutional attack. The wide range of implements used as drug paraphernalia, and the fact that many of these items have innocent uses, make it difficult to draft paraphernalia legislation which is not unconstitutionally vague or broad."

Nathan went on to describe the Model Act's solution:

"The model statute attempts to address the primary constitutional objections to the existing state laws, i. e., they are void for vagueness because they do not give fair notice as to what is proscribed. First, the statute enumerates with considerable specificity the precise items which are banned. Secondly, and even more importantly, the statute requires that a defendant charged with possession have the 'specific intent' to use the item in conjunction with the consumption of a controlled substance. With respect to manufacturers and sellers, there is a requirement that they know or have a substantial reason to know that the items will ultimately be used with a controlled substance. To assist in ascertaining the specific intent or knowledge of a defend-ant, the statute sets forth more than a dozen circumstances suggesting when an item should be deemed to be drug paraphernalia.

"These provisions of the Act go far to eliminate the vagueness objections to prior paraphernalia legislation by giving fair notice to any potential violator that his conduct is proscribed if he possesses the requisite intent. The innocent user of paraphernalia-type implements is therefore protected to the maximum extent possible." *Id.* at 5–6.

The Model Act's provisions requiring knowledge and intent are contained in both the definitional and substantive violation sections. Article I, "Definitions", defines "drug paraphernalia" as "all equipment, products and materials of any kind which are used, intended for use, or designed for use" in drug-related activity. In the Comment on this provision, the drafters of the Act say:

"To insure that innocently possessed objects are not classified as drug paraphernalia, Article I makes the knowledge or criminal intent of the person in control of an object a key element of the definition. Needless to say, inanimate objects are neither 'good' nor 'bad,' neither 'lawful' nor 'unlawful.' Inanimate objects do not commit crimes. But, when an object is controlled by people who use it illegally, or who intend to use it illegally, or who design or adapt it for illegal use, the object can be subject to control and the people subjected to prosecution. Article I requires, therefore, that an object be used, intended for use, or designed for use in connection with illicit drugs before it can be controlled as drug paraphernalia." Comment, pp. 6–7 (1979).

The Model Act also requires specific knowledge as an element of the substantive offenses created by Article II. Section B contains the provision pertinent to sellers:

"It is unlawful for any person to deliver, possess with intent to deliver, or manufacture with intent to deliver, drug paraphernalia, knowing, or under circumstances where one reasonably should

know, that it will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this Act. Any person who violates this section is guilty of a crime and upon conviction may be imprisoned for not more than ( ), fined not more than ( ), or both."

The Comment to the Act, p. 9–10, bases this provision on the proposition that "[s]uppliers who furnish goods or services knowing they will be used to facilitate a crime are not immune from liability," quoting from *Backun v. United States*, 112 F.2d 635, 637 (4th Cir. 1940):

"To say that the sale of goods is a normally lawful transaction is beside the point. The seller may not ignore the purpose for which the purchase is made *if he is advised of that purpose*, or wash his hands of the aid that he has given the perpetrator of a felony by the plea that he has merely made a sale of merchandise. One who sells a gun to another *knowing that he is buying it to commit a murder*, would hardly escape conviction as an accessory to the murder by showing that he received full price for the gun; and no difference in principle can be drawn between such a case and any other case of a seller *who knows that the purchaser intends to use the goods which he is purchasing in the commission of a felony*. In any such case, not only does the act of the seller assist in the commission of the felony, but his will assents to its commission, since he could refuse to give the assistance by refusing to make the sale." (emphasis added).

State and local laws modeled upon the Model Act have been upheld by a number of district courts.[6] However, in *Record Revolution No. 6, Inc. v. The City of Parma, supra*, the Sixth Circuit struck down as unconstitutionally vague and overbroad Ohio municipal ordinances "based almost verbatim" on the Model Act. At 919. Reversing the district court, the Sixth Circuit held that "[i]f the definition of 'drug paraphernalia' is vague or overbroad in any respect, the ordinances must be declared unconstitutional." At 928. The court then focused on the phrases "used, intended for use, or designed for use" which appear in Article I of the Model Act, and were adopted verbatim by the Ohio ordinances (as they are in § 863.222(a) of the Westchester ordinance). The *Parma* court concluded that "[t]he statutory terms 'use' or 'intended for use' are not vague or overbroad," at 929; the court solved the problem of "transferred intent" (from guilty manufacturer or purchaser to innocent seller) by construing the statute to require that the requisite knowledge or intent be that of the individual accused. *Id.* at 928–929. However, the phrase "designed for use" was condemned as vague and overbroad. The Sixth Circuit reasoned:

"Vagueness enters in our case once the ordinances begin to define drug paraphernalia in terms of the primary adaption or dominant purpose of the design. Then the definition begins to depend upon the ingenuity or purpose of the purchaser rather than the seller and upon the current practices of the clandestine society of drug users. *Geiger v. City of Eagan*, 618 F.2d 26 (8th Cir. 1980); *Music Stop, Inc. v. City of Ferndale*, 488 F.Supp. 390 (E.D.Mich., 1980).

"The major ambiguity in defining drug paraphernalia in terms of the 'design' of items is the lack of any design characteristics that distinguish lawful purposes from unlawful purposes. The type of object that can become, or be used as, drug paraphernalia is limited only by the imagination of the user. *Geiger v. City of Eagan*, 618 F.2d at 29. The record in our cases established the absence of any unique design characteristics."

6. See *Mid-Atlantic Accessories Trade Association v. State of Maryland*, 500 F.Supp. 834, (D.Md., 1980) and cases cited at 842.

The district court in *Parma*, while invalidating parts of the ordinances, concluded that constitutionality could be preserved by severing out what was invalid. Article IV of the Model Act contains a severability clause applicable to any of its provisions. Section 863.225 of the Westchester ordinance contains comparable language. However, in *Parma* "[t]he explicit terms of the ordinances, unlike the Model Act, limit severability to the section describing the substantive offenses." At 931. The Sixth Circuit thereupon observed:

"Therefore, the defective parts of the definition cannot be severed. Moreover, the vagueness and overbreadth of the definition infect the whole ordinance." *Ibid.*[7]

A view contrary to *Parma* was expressed by the district court in *Mid-Atlantic Accessories Trade Association v. State of Maryland, supra.* Judge Harvey, upholding the constitutionality of a Maryland statute based upon the Model Act, contrasted the Model Act with earlier, invalid efforts to control drug paraphernalia:

"The most important difference is that the Model Act is structured so that an essential element of proof in every case is a showing of specific intent. Statutes other than those based on the Model Act lack this requirement in varying degrees, and as the various cited opinions indicate, it is this requirement of specific intent which has saved the Model Act." At 543.

Judge Harvey perceived no unconstitutional vagueness in the phrase "designed for use." He analyzed the definitional section of the statute thus:

" 'Design' connotes an intentional act as well as an objective set of characteristics. When considered in the context of this statute, it is clear that it is the subjective, intentional sense in which 'designed' is used.

"The fact that 'designed for use' and 'intended for use' are used in the disjunctive throughout the Act does not necessarily indicate that each of the two phrases means something entirely different. Rather, it is apparent from a reading of the Act in its entirety that all three verbs (i. e. used, designed and intended) were included in the definition of drug paraphernalia so that the terms would be applicable to all the kinds of conduct barred in the Act's substantive sections. A seller will 'intend' an item for use, while a manufacturer is more likely to 'design' an item for use, and a user will simply 'use' the item." *Id.* at 844–45.

Free as I am to choose between the analyses of Sixth Circuit and the District of Maryland, I prefer the latter. One may agree with the Sixth Circuit that there is a "lack of any design characteristics that distinguish lawful purposes from unlawful purposes," at least in respect of certain items; but common English usage supports the district court's observation in *Mid-Atlantic* that " '[d]esign' connotes an intentional act as well as an objective set of characteristics." The prosecution may have some difficulty proving that a manufacturer intentionally "designed" for drug use an item which could have others, but that is a different question. The element of scienter necessary to preserve a law from vagueness adds, by definition, another fact for the prosecution to establish by competent evidence. The drafters of the Model Act sought to eliminate vagueness and transferred intent by requiring the requisite elements of knowledge or intent on the part of manufacturer, seller, or user, in order to bring a particular artifact within the definition of "drug paraphernalia." I see no basis for holding that they succeeded in respect of the phrase "intended for use," but failed with "designed for use."

7. With due respect, I am puzzled by the juxtaposition of these two sentences. The word "moreover" seems to suggest that even if the offending phrase could be severed, it would nonetheless "infect the whole ordinance"; but how can it do so, if the infecting organism has been excised by severance? But I need not grapple further with this seeming anomaly, since as noted *supra* the severability provision of the Westchester ordinance extends to all provisions of the law.

However, as the court also observed in *Mid-Atlantic*, the saving requirement of specific intent has two aspects: defining "drug paraphernalia"; and delineating the elements of the substantive offense:

"SB 63 [the Maryland statute] incorporates a specific intent standard in two ways. First, drug paraphernalia is defined in § 287A(A) as any item 'used, designed for use, or intended for use' with illegal drugs. Secondly, the substantive offenses are defined in terms of specific intent. The prohibited acts are (1) using drug paraphernalia, or possessing same with intent to use, to, *inter alia*, inject, ingest, inhale or otherwise introduce illegal drugs into the human body (§ 287A(C)) and (2) selling or manufacturing drug paraphernalia knowing, or under circumstances where one reasonably should know, that the drug paraphernalia will be used, to, *inter alia*, inject, ingest, inhale or otherwise introduce illegal drugs into the human body. (§ 287A(D)). In the absence of the first sort of specific intent, nothing is drug paraphernalia. In the absence of the second, no act committed by a person and involving drug paraphernalia is prohibited." Id. at 844.

█ It is at the second stage—definition of the substantive offense—that the Westchester County legislators departed from the Model Act. Section 863.223 of the ordinance, defining the substantive offense, provides only that it is a violation of the code "for any merchant or other person to knowingly sell, offer for sale, or display any cocaine spoon, marijuana pipe, or any other drug-related paraphernalia." The parties debate in their briefs whether "knowingly" modifies only "sell, offer for sale, or display," or "drug paraphernalia," the defendants contending for the latter because it constitutes a more demanding scienter requirement and thus reinforces constitutionality. But I may accept that construction and still conclude, as I do, that proof of knowledge of *actual use* is essential to the constitutional validity of such laws.

The drafters of the Model Act clearly regarded such proof as necessary to repel constitutional attack. "[E]ven more importantly," said Deputy Assistant Attorney General Nathan to the House Committee, "there is a requirement [with respect to sellers] that they know or have a substantial reason to know that the items will ultimately be used with a controlled substance." Absent that requirement, a merchant would be subject to criminal conviction for selling an item thereafter put to entirely innocent use. That is not acceptable, at least in respect of items such as pipes, spoons and clips, capable of both lawful and unlawful use, and hence not contraband *per se*.[8]

The primary constitutional deficiency is that without the requirement that the seller know the item was to be used with drugs, an unacceptable risk of arbitrary and discriminatory enforcement arises. The Model Act's scienter requirement in the substantive offense section obliges an arresting officer to have probable cause to believe that the seller knew the purchaser would, in fact, use the item with drugs. A comparable requirement appears in N.Y. Penal Law § 220.50, quoted at n.2 *supra*. Such evidence may be developed in an investigation, as the case at bar indicates. Eliminate that requirement, and law enforcement authorities are given an impermissible latitude in arresting and prosecuting merchants on the basis of the authorities' subjective perceptions of the nature of the business being conducted. This implicates the second, and discrete, concern expressed in *Grayned, supra*: that "if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them." 408 U.S. at 108, 92 S.Ct. at 2298.

*Parma* illustrates the problem:

"The testimony of Detectives Bennett and Rutt, qualified experts on narcotics

---

**8.** This analysis does not apply to items, some of which the present plaintiffs sell, whose only conceivable use relates to the preparation or ingestion of drugs. An ordinance limited to such items would stand upon a different constitutional footing.

law enforcement, shows convincingly the danger of arbitrary and discriminatory enforcement of the ordinances by the police. Detectives Bennett and Rutt would arrest any retailer who sold pipes with screens or chamber pipes, despite the ability to use these pipes lawfully. App. 712–13, 717–18, 850–51. Detective Rutt would arrest a retailer operating a 'head shop' if it sold alligator clips or cigarette papers, but not a drug store owner selling the same items. App. 853, 864–65. This testimony suggests that the ordinances would be enforced only against 'head shops,' as designated by the local law enforcement officials. No guidelines have been written to prevent such selective discriminatory enforcement. Because the ordinances would permit at least the arrest and prosecution of persons by police and prosecutors who claim to know drug paraphernalia when they see it, but cannot define it any more precisely in advance, the definition of drug paraphernalia is vague and overbroad." At 931 (footnotes omitted).

Virtually identical testimony was given in the case at bar by Karl Fulgenzi, Deputy Commissioner of the Department of Public Safety for Westchester County. That testimony is fairly paraphrased in plaintiffs' post-trial brief at pp. 37–39, set out in the margin.[9] While Commissioner Fulgenzi expressed his commendable intention to train his police officers carefully in enforcement of the ordinance, uncertainties are inherent in its terms, as he forthrightly conceded:

"Q. [by plaintiffs' counsel] But couldn't officers reasonably disagree as to what implies, as you term it, that it is being used or being offered for sale in an illegal manner as opposed to a legal manner?

"A. I could only say officers do make mistakes occasionally and that's why we have issues that go to court.

"Q. But as a store owner then I would have to guess—

"A. No.

"Q. —as to how I am displaying it, as to the manner of display, as to what an officer might think about me and not necessarily about the object.

"A. I believe as a store owner, as I indicated earlier, sir, it should be your

9. "He insisted time and time again that anyone displaying or selling a pipe with a screen is in violation of the Ordinance (Tr. 759, 761, 785–8, 802, 811, 824, 918, 920, 923), in stark contrast to Don Good's and Mark Kilik's [expert witnesses] testimony that screens were originally developed for use with tobacco and served as a cooling mechanism for any type of smoking agent, preventing the mixing of tobacco, tars, and saliva in the heel of the pipe (Tr. 546, 547, 1081). (Curiously, he also testified that if *he* were to put a screen into a pipe he purchased, that pipe would not constitute paraphernalia (Tr. 922–24)). He additionally said that anyone displaying plaintiffs' EG–11, an antique which has been and could be used as either a pipe or cigar holder, would in all circumstances be in violation of the Ordinance, and asserted that the Ordinance places the burden on the storeowner to determine whether the items he sells are legal or illegal (Tr. 817–18). At one point, he simply said that one would have to consult an expert to determine whether a particular item could be lawfully sold (Tr. 816).

"Perhaps most revealing was Commissioner Fulgenzi's position that at some point a store becomes so saturated with 'head shop' items that sale or display of virtually any dual-use or multi-use product would constitute a crime (Tr. 886–88).

"Thus, a novelty and gift store which decides to stock rolling papers and tobacco is 'fine' (Tr. 889). The owner could add the 'average' pipe and still 'get away with not being arrested' (Tr. 889). A scale could be added without a problem, so long as it wasn't sold in response to requests for a drug weighing device (Tr. 889). Jewelry cases could be added as well (Tr. 890), but at this point the proprietor would be 'getting dangerously close' to being in violation, just by 'put[ting] nothing but this sort of product in a particular section of your store' (Tr. 898–91). Adding cigarettes would leave the owner 'in dangerous territory' and he would be 'getting at the borderline of getting arrested,' (Tr. 891) 'depend[ing] on the administration of the particular department and how they educate their personnel to make sure enforcement is done properly.' (Tr. 892).

"When, however, a book section was added with 100 book titles, including *The Marijuana Grower's Guide* and *The Cocaine Consumer's Handbook*, the store had 'definitely' crossed the line (Tr. 895). But, if the store were larger and the scale were moved to a jewelry section, 'you might be safe,' the Commissioner first said (Tr. 896), changing his opinion thereafter (Tr. 897)."

business to know what you are selling and does it comply with laws.

"THE COURT: Well, Mr. Lefcourt's last question was not whether or not policemen occasionally make a mistake. Of course they do. Everyone does. District judges do.

"His question was, would it not be possible, under the phrasing of this ordinance, for two separate police officers to reasonably disagree between themselves as to whether or not the factors indicate drug paraphernalia or not?

"THE WITNESS: Absolutely, yes, they could reasonably disagree.

"THE COURT: Do you think such a disagreement between police officers could arise from the wording of the ordinance?

"THE WITNESS: Exactly, yes, very much so." Tr. 840–841.

It is precisely at this point of enforcement uncertainty that the additional requirement of knowledge of illicit use, included in the Model Act and Penal Law § 220.50 but omitted from the Westchester ordinance, performs its saving office. Enforcement agencies may then be instructed that, in the absence of such knowledge, "no act committed by a person and involving drug paraphernalia is prohibited." *Mid-Atlantic, supra.* Guided by that instruction, officers and prosecutors will be far less prone to initiate or press proceedings against retailers on the basis of subjective, inadequately defined, and hence arbitrary or discriminatory criteria.[10] That the present ordinance suffers from that constitutional defect emerges clearly from the record.

While recognizing the laudable desire of the legislature to addresss a perceived social evil, I conclude that the Westchester drug paraphernalia ordinance, as presently drafted, is unconstitutionally vague on its face.

## VII.

### Other Constitutional Theories

■ Plaintiffs offered evidence in support of one additional constitutional challenge to the ordinance: the asserted absence of any rational relation to a legitimate government purpose. That absence is said to violate the Due Process Clause of the Fourteenth Amendment.

Plaintiffs rely upon the expert opinion testimony of Norman Zinberg, M.D., a clinical professor of psychiatry at Harvard Medical School, and a member, *inter alia*, of the Council of the National Institute for Drug Abuse and the Council of the National Institute of Mental Health. It is Dr. Zinberg's firmly held belief, to which he has given voice in numerous articles and appearances before tribunals and legislative bodies, that "prohibition, whether it is couched in legislative terms or starting a war against a certain substance, has not only usually created more use, but has increased deleterious use." Plaintiffs' posttrial brief at p. 8, summarizing Dr. Zinberg's trial testimony. Dr. Zinberg illustrated his theory by reference to the attempted prohibition of alcohol in this country, and the unsuccessful "war" waged by the United States Armed Services against the use of marijuana in Vietnam, the witness further testifying that such efforts contributed directly to increased use of heroin among service personnel stationed in that country.

While Dr. Zinberg expressed his opinions in a forceful and articulate manner, he candidly conceded that other experts, qualified in the field, entertained contrary views

---

**10.** As noted *supra*, the Model Act, Article II, Section B, provides that it is unlawful to "deliver" drug paraphernalia "knowing, *or under circumstances where one reasonably should know*, that it will be used" in connection with drugs. Courts have divided on the validity of the italicized phrase. Compare *Parma, supra*, at 936 ("[b]ecause most uses of the outlined items are lawful and common, the 'reason to know' standard is too openended and too susceptible to misapplication to satisfy the dictates of due process") with *Mid-Atlantic, supra*, at 845 ("The 'reasonably should know' clause is simply an elaboration of 'knowing'. A constructive knowledge standard in a criminal statute is not an impermissibly vague one"). Since the issue is not presented by the present wording of the Westchester ordinance, I intimate no view upon it.

with respect to the efficacy of drug and drug-related legislation.

 This testimony does not rise to the level of demonstrating a due process violation. Drugs and their impact upon the population are a legitimate source of governmental concern. A local government "clearly has the power through a properly drawn ordinance to discourage the availability of drugs and the acceptance of drug use by prohibiting the sale of drug-related devices." *Geiger v. City of Eagan, supra,* at 28. The ordinance in suit would be vulnerable to this aspect of due process attack only if I were prepared to hold that it is "not reasonably restricted to the evil with which it is said to deal," *Butler v. Michigan,* 352 U.S. 380, 383, 77 S.Ct. 524, 525, 1 L.Ed.2d 412 (1957), or that Dr. Zinberg's opinions are so clearly and irrefutably correct that the legislature acted irrationally in adopting a contrary view. I conclude, however, that on the present state of scientific knowledge, the county legislators were free to choose between conflicting theories of prevention, cause and effect. "The Due Process Clause does not empower the judiciary 'to sit as a superlegislature to weigh the wisdom of legislation' . . ." *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 124, 98 S.Ct. 2207, 2213, 57 L.Ed.2d 91 (1978). Courts, however they may assess testimonial evaluation of a statute's social or economic wisdom, cannot override the legislators' authority to legislate. So long as a law bears a reasonable relation to the state's legitimate purpose, it survives a due process claim, regardless of its ultimate efficacy. *Exxon Corp.,* at 124–25, 98 S.Ct. at 2213.

Plaintiffs also invoke the Equal Protection Clause. However, there is no basis for facial equal protection attack. The ordinance creates no classifications at all, applying equally to all retail establishments. *Mid-Atlantic Accessories Trade Association v. State of Maryland, supra,* at 849–850.

While plaintiffs refer to the First Amendment, this case presents no basis for considering it. Unlike the local ordinances in *Parma, supra,* the Westchester County ordinance contains no express prohibition against advertising. Accordingly, the issues respecting proper limitations upon commercial speech confronting the *Parma* court, at 936–937, do not arise in the case at bar. Sufficient basis for invalidating the ordinance is found in the due process concept of vagueness; the trial record, which did not explore the free speech issue at all, neither requires nor supports a treatment of the concept.[11]

Plaintiffs' remaining constitutional theories have been uniformly rejected by the courts in drug paraphernalia cases that have considered them, *Mid-Atlantic Accessories Trade Association v. State of Maryland, supra,* at 849–850; *Nova Records, Inc. v. Sendak,* No. IP80–431–C, 504 F.Supp. 938, at 943–944 (S.D.Ind., December 9, 1980), at slip op. 8–9, and require no further discussion.

## CONCLUSION

Article IX of the County of Westchester Consumer Protection Code, titled "Sale and Display of Drug Accessories" and comprising sections 863.221–863.226, is hereby declared impermissibly vague, and consequently in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution. Its enforcement will be permanently enjoined.

Settle order and judgment on five (5) days' notice.

11. Cf. *Smith v. Goguen,* 415 U.S. 566, 583 n.32, 94 S.Ct. 1242, 1252, 39 L.Ed.2d 605 (1974): "We have not addressed Goguen's First Amendment arguments because, having found the challenged statutory language void for vagueness, there is no need to decide additional issues. Moreover, the skeletal record in this case, see n.1, supra, affords a poor opportunity for the careful consideration merited by the importance of the First Amendment issues Goguen has raised."