Hope & Walter HOETZER, Jr., d/b/a The Marrakesh, Kathleen Sue Godwin, d/b/a Suzie's Cloud Nine; Janice Walleshauser, d/b/a Starseed Enterprise; Leo M. Becker, Jr., d/b/a Popeye's Headquarters; Robert C. Pochedley, d/b/a Buffalo Headquarters, Inc. & The Echo Stores, Inc.; Judy Reshen, d/b/a J.E.M. Jewelry Dis–Trib. Co., Plaintiffs,

v.

The COUNTY OF ERIE; Edward Rutkowski; and Kenneth Braun and The State of New York and Robert Abrams, Defendants.

Civ. No. 80–421.

United States District Court, W. D. New York.

Sept. 16, 1980.

Joseph V. Sedita, Buffalo, N.Y., for plaintiffs.

Thaddeus J. Szymanski, Erie County Atty., (John R. Drexelius, Asst. County Atty., of counsel), Buffalo, N.Y., for defendants, The County of Erie, Edward Rutkowski and Kenneth Braun.

Robert Abrams, Atty. Gen., N.Y.S. (Joseph G. Homsy, Asst. Atty. Gen., of counsel), Buffalo, N.Y., for defendants, The State of New York and Robert Abrams.

## FINDINGS OF FACT, CONCLUSIONS OF LAW and ORDER

ELFVIN, District Judge.

■ Plaintiffs initially commenced this action under 42 U.S.C. § 1983 to declare Erie County Local Law No. 4–1980 ("Local Law 4–1980") unconstitutional as violative of the due process clause of the Fourteenth Amendment and to enjoin defendants the County of Erie, Edward Rutkowski and Kenneth Braun (herein sometimes "the County defendants") from enforcing the same. Plaintiffs and the County defendants appeared before me May 27, 1980 pursuant to my order to show cause why defendants should not be enjoined preliminarily from enforcing Local Law 4–1980. Toward the close of oral argument I inquired whether there was any need for the taking of proof. The responses of counsel indicated that material questions of fact do not exist. With their consent I consolidated the hearing on preliminary relief with a trial on the merits pursuant to Fed.R.Civ.P. rule 65(a)(2) and ordered that memoranda of law regarding the issue of permanent relief should be submitted no later than May 30, 1980. Such memoranda were submitted and the case was taken under advisement by me for final adjudication. Several events then took place. The Senate and Assembly of New York State enacted and Governor Carey signed Chapters 811 and 812 of the laws of New York of 1980, adding a new Article 39 or thirty–nine (consisting of sections 850 through 853) to New York's General Business Law ("the State law") which deals with generally the same subject matter as does Local Law 4–1980 and, according to plaintiffs, suffers from many of the same constitutional infirmities. Accordingly, plaintiffs on July 25, 1980 filed an Amended Complaint adding a similar constitutional challenge to the State law, which was scheduled to become effective July 30, 1980, and naming The State of New York and Robert Abrams (herein "the State defendants") as additional defend-

ants. On or about July 29, 1980 a suit was commenced in the United States District Court for the Southern District of New York by two New York City residents also seeking declaratory and injunctive relief against enforcement of the State law on grounds similar to those asserted before me. A temporary restraining order enjoining enforcement was issued July 29th by the Hon. Vincent L. Broderick, Judge of the United States District Court for the Southern District of New York.[1] Argument on plaintiffs' motion for a preliminary injunction in the latter action was initially scheduled for August 5, 1980 before the Hon. John M. Cannella, a judge of that court, but has been adjourned several times on consent of counsel and has now been adjourned by Judge Cannella until a decision shall have been rendered by the Hon. Charles S. Haight, Jr., a judge of said court, in a similar but unconnected action challenging a Westchester County drug paraphernalia ordinance. I am advised that Judge Haight is now conducting a trial or evidentiary hearing in the action. To avoid the possibility of inconsistency with the decisions, past and prospective, of Judges Broderick and Cannella, and because the temporary injunctive relief granted in the Southern District action already restrains the State defendants herein, plaintiffs' suit, insofar as it seeks injunctive and declaratory relief against the State law, should be stayed and held in abeyance pending final resolution of the action before Judge Cannella. If plaintiffs in the future demonstrate a realistic threat of enforcement of the State law (despite the Southern District proceedings) by the County defendants, they may renew their motion for preliminary injunctive relief.

The following constitute my Findings of Fact and Conclusions of Law in accordance with Fed.R.Civ.P. rule 52(a) relating to plaintiffs' challenge to Local Law 4–1980.

The pertinent facts may be summarized as follows. Each of the plaintiffs owns a wholesale or retail business in Erie County, N.Y. and in the operation of such business sells a variety of items including "smoking accessories" and "snuff accessories." Said smoking accessories and snuff accessories comprise between 30 and 75 percent of the inventory of each of such businesses.

In response to the growing use of marijuana and other drugs by residents, especially minor residents, of Erie County, the Erie County Legislature passed Local Law 4–1980 April 17, 1980. Said law, which is based in part on a "model act" drafted by the Drug Enforcement Administration of the United States Department of Justice, bans the use, possession, manufacture, delivery and sale of drug paraphernalia and purports to ban the sale of smoking accessories and smoking herbs to minors. Local Law 4–1980 was signed into law by defendant Rutkowski May 6, 1980 and took effect May 27, 1980 pursuant to New York's Municipal Home Rule Law § 27. Subsequent to the commencement of this suit and on June 5, 1980, a manager of "Echo II," one of the stores owned by plaintiff Pochedley, was arrested and charged with a violation of Local Law 4–1980. It does not appear that any person connected with any of the other plaintiffs herein has been charged with any such violation.

■■ The so-called "*Younger* doctrine" (announced in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its companion cases) permits federal courts to interfere with the enforcement of state and local laws only in situations where the principles of equity, comity and federalism are not offended. Inasmuch as this suit was instituted prior to the commencement of any criminal prosecutions against any of the plaintiffs, such principles are not offended by the issuance from this court of declaratory or injunctive relief. *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1976) (declaratory relief); *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct.

---

1. I am advised that the Southern District action was initially assigned to the Hon. John M. Cannella. Because Judge Cannella was then on vacation, plaintiffs' Order to Show Cause, containing a motion for a temporary restraining order, came on to be heard by Judge Broderick pursuant to regular Southern District procedure.

2561, 45 L.Ed.2d 648 (1975) (injunctive relief).

 The power to grant such relief is conditioned, of course, upon the existence of an Article III case and controversy and of standing by these plaintiffs. Defendants argued initially that plaintiffs have not surmounted this hurdle because none of them has been arrested or threatened with prosecution under Local Law 4–1980. The arrest of the manager of one of the stores operated by plaintiff Pochedley for sale of an item of drug paraphernalia moots this argument as to him. I find that the affidavits submitted by each of the other plaintiffs demonstrate that the threat of prosecution under sections IIC and IID of Local Law 4–1980 is real rather than speculative. Thus, the instant case presents an Article III case and controversy; plaintiffs have standing to contest the constitutionality of these sections of Local Law 4–1980. This, however, does not follow as to sections IIA and IIB of Local Law 4–1980. Plaintiffs are all retail distributors, not users for their own consumption, or manufacturers, of items potentially within Local Law 4–1980's prohibitions of possession for personal use or manufacture. They have no standing to challenge sections IIA and IIB. Additionally, plaintiffs herein levy no challenge against Section IV of Local Law 4–1980 (prohibiting sales of smoking accessories and "smoking herbs" to minors) presumably because of the failure of said section to provide any penalties for its violation. The County defendants' counsel at oral argument conceded that Section IV was unenforceable.

 Defendants argue that, if this case presents a justiciable controversy, I should abstain from reaching the merits of plaintiffs' challenges to Local Law 4–1980 because state courts' interpretations in individual criminal prosecutions under said law may avoid the need for this court to rule on the constitutional claims presented herein. In *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), the Court held that where a federal constitutional claim is premised on an unsettled question of state law the federal court should stay its hand to provide the state courts the opportunity to settle such question and thereby avoid the possibility of unnecessarily deciding a constitutional claim, or of reaching a necessarily tentative resolution on an issue of state law, subject to displacement by a definitive state holding. However, because of the delays inherent in invoking the so-called *Pullman* doctrine and the danger that valuable federal rights might be lost if such rights are not adjudicated expeditiously in federal court, such abstention must be invoked only in special circumstances and upon careful consideration of the facts. *See, Harris County Comm'rs Court v. Moore*, 420 U.S. 77, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975).

As will be discussed herein, I have concluded that Local Law 4–1980 has been preempted by the State law. It is true that the state courts could, in due course, authoritatively resolve this issue. However, until such issue was decided,[2] plaintiffs would remain subject to Local Law 4–1980, with which they claim they are able to be certain of complying only by ceasing entirely sales of smoking accessories with potentially disastrous effects on their businesses and livelihoods and a real possibility of infringement of their rights under the Constitution. Under these circumstances I need not abstain and I decline to do so. *See, e. g., Baggett v. Bullitt*, 377 U.S. 360, 375–80, 84 S.Ct. 1316, 1324, 12 L.Ed.2d 377 (1964).

The text of Local Law 4–1980 provides as follows:[3]

---

2. Such a challenge would have to be commenced by filing an action for injunctive or declaratory relief in state court. Such a challenge could not be effectively raised in a defense to the charges now pending against the manager of Echo II, as such arrest antedated both the passage and the effective date of the State law.

3. The parties have not submitted an official copy of Local Law 4–1980. The court assumes that the appendix to the Complaint entitled "PROPOSED LOCAL LAW PROHIBITING DRUG AND SMOKING PARAPHERNALIA" sets forth the law as enacted by the Erie County Legislature.

"Section 1 [sic]

"DEFINITIONS

"A. 'Controlled substance' means any controlled substance as defined by subdivision five of Sec. 220.00 of the New York State penal law [Penal Law].

"B. The term 'Drug Paraphernalia' shall mean all equipment, products and materials of any kind which are primarily used, adapted for use, or designed for use, in manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance or marijuana as defined by Section 220.00 (subd. 5. and 6.) of the New York Penal Law. The term 'Drug Paraphernalia' as used herein does not include any item or substance of which knowing possession thereof would constitute a crime under Section 220.50 of the Penal Law.

"C. 'Marihuana' means marihuana or concentrated cannabis as defined by subdivision six of Sec. 220.00 of the New York State penal law.

"D. 'Minor' means a person who has not attained the age of eighteen years.

"E. 'Unlawfully' means in violation of Article thirty–three of the Public Health Law.

"F. 'Deliver' means to give or dispose of to another, or to offer or agree to do the same.

"Section II

"OFFENSES

"A. Possession of Drug Paraphernalia. It shall be unlawful for any person to use or to possess with intent to use, drug paraphernalia, under circumstances evincing an intent to use, to convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, ingest, inject, inhale or otherwise introduce into the human body a controlled substance or marihuana.

"B. Manufacture of drug paraphernalia. It shall be unlawful for any person to knowingly manufacture drug paraphernalia under circumstances evincing an intent to use or under circumstances evincing knowledge that some person intends to use the equipment, products or materials for purposes of unlawfully manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance or marihuana.

"C. Delivery of drug paraphernalia. It shall be unlawful for any person to knowingly deliver to another drug paraphernalia under circumstances evincing an intent to use or under circumstances evincing knowledge that some person intends to use the equipment, products or materials for purposes of unlawfully manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance or marihuana.

"D. Sale of Drug Paraphernalia. It shall be unlawful for any person to sell, or possess with intent to sell, or offer to sell, drug paraphernalia, under circumstances evincing an intent to use or under circumstances evincing knowledge that some person intends to use the same to manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance or marihuana.

"E. This section does not apply to or govern any matter, act, or omission controlled by Article 33 of the Public Health Law or Penal Law Section 260.20 (Subd. 5.) This section shall not be construed to prohibit any possession, manufacture, or use of hypodermics made lawful by Section 220.45 of the Penal Law.

"F. Any drug paraphernalia used in violation of this section shall be seized by and forfeited to the agency enforcing this law.

"G. Whenever an employee of a business establishment, acting as an agent for the business establishment, is charged with

a violation of this local law, there shall be a rebuttable presumption that the owner, proprietor, operator, or manager of the establishment had knowledge of the acts of the employee or agent and that said violation was permitted in contravention of this law by the said owner, proprietor, operator, or manager of the establishment.

"Section III

"In determining whether there is a violation of this law, a court or other authority may consider, in addition to all other logically revelant [sic] factors, the presence of any or all of the following:

"(1) Statements by an owner or by anyone in control of the object concerning its use;

"(2) The proximity of the object, in time and space, to a direct violation of this Act;

"(3) The proximity of the object to controlled substances;

"(4) The existence of any residue of controlled substances on the object;

"(5) Direct or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons whom he knows, or should reasonably know, intend to use the object to facilitate a violation of this law; the innocence of an owner, or of anyone in control of the object, as to a direct violation of this Law shall not prevent a finding that the object is adapted for use, or designed for use as Drug paraphernalia;

"(6) Instructions, oral or written, provided with the object concerning its use;

"(7) Descriptive materials accompanying the object which explain or depict its use;

"(8) National and local advertising concerning its use;

"(9) The manner in which the object is displayed for sale;

"(10) Whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;

"(11) Direct or circumstantial evidence of the ratio of sales of the object to the total sales of the business enterprise;

"(12) The existence and scope of legitimate uses for the object in the community;

"(13) Expert testimony concerning its use.

"Section IV

"Sale of Smoking Accessories to a Minor.

"A. It shall be unlawful to sell, barter, exchange, deliver or give away or cause or permit or procure to be sold, bartered, exchanged, delivered, or given away smoking accessories to any person under eighteen years of age.

"It shall be unlawful to sell, barter, exchange, deliver or give away or cause or permit or procure to be sold, bartered, exchanged, delivered, or given away smoking herbs to any person under eighteen years of age.

"B. Any person under the age of eighteen who presents, or offers to any vendor, or to the agent or employee of such vendor any written evidence of age which is false, fradulent [sic] or not actually his own for the purpose of purchasing or attempting to purchase any smoking accessory or herb shall be guilty of a violation.

"C. Warning to Minors.

"Any person, firm, partnership, company or corporation operating a place of business wherein smoking accessories and smoking herbs are sold or offered for sale, shall post in a conspicuous place upon the premises a sign upon which there shall be imprinted the following statement, 'SALE OF SMOKING ACCESSORIES AND SMOKING HERBS TO PERSONS UNDER EIGHTEEN YEARS OF AGE OR THE MISREPRESENTATION OF AGE TO PROCURE SUCH A SALE IS PROHIBITED BY LAW'. Such a sign shall be printed on a white card in red letters at least one-half inch in height.

"D. The sale of smoking accessories to a minor or of Drug Paraphernalia shall constitute presumptive evidence that such sale was permitted in contravention of this law

by the person exercising dominion or control over the business premises in which the sale is made.

## "Section V
## "PENALTY

"Any person found guilty of a violation of Section 2(A) [sic] of this local law shall, for the first offense, be guilty of a violation and shall be subject to a fine fixed by the court not exceeding $250.00 or a term of imprisonment not exceeding fifteen days or both. For each succeeding offense, such person shall be guilty of a Class A misdemeanor and shall be subject to a fine fixed by the court not exceeding $1,000.00 or a term of imprisonment not exceeding one year or both.

"Any person found guilty of a violation of Section 2(B)(C) or (D) [sic] of this local law shall be guilty of a Class A misdemeanor.

## "SEVERABILITY

"If any provision of this Law or the application thereof to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the Law which can be given effect without the invalid provision or application, and to this end the provisions of the Law are severable."

Plaintiffs contest the constitutionality of various provisions of Local Law 4–1980 on the ground of vagueness in viola-tion of the due process clause of the Fourteenth Amendment. However, I need adjudicate the constitutional question plaintiffs present only if Local Law 4–1980 is valid and effective as a matter of New York law. At a pretrial conference held primarily to determine the precise text of the New York law, I raised *sua sponte* the question of preemption. The County defendants submitted a letter brief arguing that Local Law 4–1980 was not preempted; the State defendants declined to respond; and plaintiffs determined that the law of New York was too ambiguous for them to respond on this issue. Nevertheless, despite the real uncertainty of state law to which plaintiffs refer, I must nonetheless attempt to determine how New York's courts would resolve this question in order to avoid unnecessary adjudication of constitutional issues. Although the question is undeniably close, I conclude that if the New York State Court of Appeals were presented with this issue it would hold that New York has preempted the field of legislation relating to the sale, possession for sale or delivery of drug paraphernalia and that sections IIC and IID of Local Law 4–1980 are therefore null and void.

The State law (reproduced in the margin) [4] is similar in broad outline to sections IIC and IID of Local Law 4–1980 in that it prohibits the possession with intent to sell and the offering for sale of "drug parapher-

4. 
"ARTICLE 39
"DRUG-RELATED PARAPHERNALIA
"Section 850. Definitions.
851. Possession and sale of drug–related paraphernalia.
852. Power of municipality to invoke license or permit.
853. Enforcement.
 § 850. Definitions. As used in this article, unless the context clearly requires otherwise, the following words or terms shall have the following meanings:
 1. 'Controlled substance' shall have the same meaning as defined in section three thousand three hundred two of the public health law.
 2. 'Drug–related paraphernalia' consists of the following objects used for the following purposes:
 (a) Kits, used or designed for the purpose of planting, propagating, cultivating, growing or harvesting of any species of plant which is a controlled substance or from which a controlled substance can be derived;
 (b) Kits, used or designed for the purpose of manufacturing, compounding, converting, producing, or preparing controlled substances;
 (c) Isomerization devices, used or designed for the purpose of increasing the potency of any species of plant which is a controlled substance;
 (d) Scales and balances, used or designed for the purpose of weighing or measuring controlled substances;
 (e) Diluents and adulterants, including but not limited to quinine hydrochloride, mannitol, mannite, dextrose and lactose, used or designed for the purpose of cutting controlled substances;
 (f) Separation gins, used or designed for the purpose of removing twigs and seeds in order to clean or refine marihuana;

nalia," [5] contains a complex description of "drug paraphernalia" and at least purports to require some proof that a person charged had actual or constructive knowledge that he was possessing or otherwise dealing with the same. There are, however, numerous differences between Local Law 4–1980 and the State law. Most important, Local Law 4–1980 is explicitly a criminal statute; the State law has no explicit criminal penalties but instead declares certain acts relating to drug paraphernalia to be nuisances and provides for termination of local licenses to operate businesses, civil penalties from $1,000 to $10,000 and forfeiture of the offending merchandise. The State law prohibits the purchase of drug paraphernalia; Local Law 4–1980 prohibits the possession and the manufacture of drug paraphernalia but not the purchase. Additionally, the definition of "drug paraphernalia" in Local Law 4–1980 is somewhat broader and Local Law 4–1980 provides a lengthy list of factors which a court is directed to consider when determining whether a violation has occurred. These differences are not trivial

and counsel for the County defendants argues forcefully that they indicate that the state legislature did not intend to preempt local legislation in this area. However, this argument must be rejected.

Under New York's Constitution and an implementing body of statutes—the Municipal Home Rule law—local governments such as Erie County have been delegated nearly the full measure of New York's police power. A local law is void as a matter of state law only if it is inconsistent with a state law or if the state legislature has evidenced an intent to occupy a field fully, leaving no room for inconsistent local legislation. It is clear that Local Law 4–1980 is not void as inconsistent with New York state law. New York's courts have recently made it clear that a local law is not "inconsistent" unless it prohibits conduct expressly permitted by state law. *See, e. g., People v. Cook*, 34 N.Y.2d 100, 109, 356 N.Y.S.2d 259, 266–67, 312 N.E.2d 452, 457 (1974). No New York law contains any language expressly permitting any conduct relating to drug paraphernalia; therefore,

---

(g) Hypodermic syringes, needles and other objects, used or designed for the purpose of parenterally injecting controlled substances into the human body;

(h) Objects, used or designed for the purpose of ingesting, inhaling, or otherwise introducing marihuana, cocaine, hashish, or hashish oil into the human body.

§ 851. Possession and sale of drug–related paraphernalia.

It shall be a violation of this article for any person, firm or corporation to possess with intent to sell, offer for sale, or purchase drug-related paraphernalia under circumstances evincing knowledge that the paraphernalia is possessed, sold or purchased for one or more of the drug-related purposes stated in subdivision two of section eight hundred fifty of this article.

§ 852. Power of municipality to revoke license or permit.

1. A county, town, city or village which issues a license or permit authorizing any person, firm or corporation to engage in the selling or offering for sale of any merchandise may revoke such license or permit upon a finding, pursuant to a hearing held thereon, that such person, firm or corporation has sold or offered for sale merchandise in violation of this article.

2. The possession with intent to sell or offering for sale of drug–related paraphernalia as defined herein is hereby declared to be

a nuisance, and where any such drug-related paraphernalia shall be taken from the possession of any person, the same shall be surrendered and forfeited to the sheriff of the county wherein the same shall be taken, except that in a city having a population of seventy-five thousand or more, the same shall be surrendered and forfeited to the police commissioner or other head of the police force or department of said city and except that in the counties of Nassau and Suffolk, the same shall be surrendered and forfeited to the commissioner of the county police department.

§ 853. Enforcement. The attorney general or any state or local health officer, town, village or city attorney, or the chief executive officer of a municipality may institute an action in a court of competent jurisdiction to enjoin any activity prohibited pursuant to section eight hundred fifty-one of this chapter. If such court finds that any person, firm or corporation has sold or offered for sale any drug–related paraphernalia, it shall assess civil penalties against such person, firm or corporation in an amount not less than one thousand dollars nor more than ten thousand dollars for each such violation."

**5.** Section 851 of the State law also declares the purchase of drug paraphernalia to be a violation.

Local Law 4–1980 is not void as inconsistent. The issue of preemption is much more complex. A local law is preempted when the state has acted in a particular field and in so acting has evidenced an intention to occupy entirely such field to the exclusion of local law. *See, e. g., People v. Judiz,* 38 N.Y.2d 529, 381 N.Y.S.2d 467, 344 N.E.2d 399 (1976); *Albert Simon, Inc. v. Myerson,* 36 N.Y.2d 300, 367 N.Y.S.2d 755, 327 N.E.2d 801 (1975); *People v. Cook, supra; Myerson v. Lentini Brothers Moving, Etc.,* 33 N.Y.2d 250, 255, 351 N.Y.S.2d 687, 692–93, 306 N.E.2d 804, 807 (1973); *Robin v. Incorporated Vil. of Hempstead,* 30 N.Y.2d 347, 350, 334 N.Y.S.2d 129, 131, 285 N.E.2d 285, 286 (1972); *Wholesale Laundry Bd. of Trade v. City of New York,* 17 A.D.2d 327, 330, 234 N.Y.S.2d 862, 865, *aff'd,* 12 N.Y.2d 998, 239 N.Y.S.2d 128, 189 N.E.2d 623 (1962). A number of factors here present cause me to conclude that New York has preempted this field. New York has in the past extensively regulated drugs and many of the common items used to administer them (such as hypodermic syringes) under the Penal Law and the Public Health Law. New York added to these statutes this new legislation as sections 850–853 of the General Business Law which regulate an extraordinary variety of what is defined as "drug paraphernalia." The County defendants argue that the definition in Local Law 4–1980 is broader than that in the State law and that this difference evinces a legislative decision *not* to be comprehensive and all–encompassing. However, the State law constitutes an amendment of the drug paraphernalia legislation originally introduced and enacted as Chapter 811 of the Laws of 1980. This slightly earlier legislation contained a definition of "drug paraphernalia" all but identical to that in Local Law 4–1980. There is clear legislative history that the original definition was narrowed only to avoid the possibility of a successful constitutional challenge to the law and therefore shows no intent not to regulate the field comprehensively. Similarly, the Legislative Memorandum accompanying Chapter 811 makes clear that civil, rather than criminal, penalties were selected because criminal penalties were thought to be unenforceable and unworkable. These differences between the statutes do not suggest any desire to allow municipalities to enact supplementary legislation. The enactment of state legislation intended to be as broad as possible without an undue risk of being found unconstitutional sufficiently evidences an intent to occupy the field fully. This conclusion is not undercut and is in fact supported by the remainder of the unusually extensive legislative history. The drafters of the legislation expressly note that local communities had passed ordinances relating to drug paraphernalia. However, they give these ordinances no further consideration and immediately proceed to declare that effective prohibition of "head shops" requires passage of statewide legislation. No mention or suggestion is made that the purpose of such legislation is to supplement or complement local acts; indeed, it appears to be the intent of the drafters that local officials would be the primary enforcers of such legislation. Their brushing aside of the local ordinances, of which they were clearly aware, evinces an intent to make the state enactment the sole remedy.[6] Additionally, the significant difficulties of drafting an effective, constitutional drug paraphernalia statute also suggest that the legislature intended to enact a uniform statewide measure that would minimize the burdens on the state and its subdivisions in defending actions such as the one before me. It is true that this evidence is not overwhelming; however, it is substantial and sufficient under the admittedly severe test of legislative preemption noted above, at least as it relates to sections IIC and IID of Local Law 4–1980.

The County defendants' arguments that Local Law 4–1980 is not preempted insofar as it prohibits not–for–resale use or posses-

---

**6.** It appears that a local law very similar to that challenged herein was enacted in late 1979 by Westchester County. Erie and Westchester Counties together contain a substantial proportion of New York's population. I find it inconceivable that, if the proponents of the state legislation had not intended to supersede these local laws, some mention would not have been made.

sion and manufacture of drug paraphernalia are substantially more persuasive. It is clear that the State law is aimed at "head shops"–i. e., wholesale and, especially, retail establishments featuring or specializing in drug paraphernalia. However, I need not decide this aspect of the preemption question at this time; as noted above, plaintiffs do not have standing to challenge these sections.

Accordingly, for the reasons herein stated, plaintiffs' suit is hereby ORDERED dismissed for lack of standing insofar as it seeks to challenge sections IIA and IIB of Local Law 4–1980; that sections IIC and IID of Local Law 4–1980 are hereby DECLARED null and void; and the County defendants are hereby enjoined from enforcing said sections; and that plaintiffs' suit is hereby ORDERED stayed and held in abeyance insofar as it challenges the State law, pending final resolution of the action entitled *Benowitz v. Carey, et al.* now before the Honorable John M. Cannella in the United States District Court for the Southern District of New York.