OPINION OF THE COURT
Harold Tompkins, J.
This action was commenced by plaintiffs seeking a declaratory judgment that Local Law No. 23 of 1983 of the City of New York (the ordinance) is unconstitutional. Local Law No. 23 amended chapter 22 of the Administrative Code of the City of New York. Plaintiffs moved before this court on August 4, 1983 for a preliminary injunction enjoining enforcement of the ordinance pending determination of the action. The ordinance was to go into effect on August 5, 1983. A temporary restraining order was granted by this court pending the hearing of the motion for a preliminary injunction on August 9, 1983 which was adjourned at the defendant’s (City) request. The City then stipulated with the plaintiffs not to enforce the ordinance *1031 pending the adjourned date of the hearing. In the interim the City has moved, and the plaintiffs cross-moved, for summary judgment.
The ordinance at issue prohibits the sale of drug paraphernalia.[1] It is criminal in nature and provides that anyone who knowingly sells, offers for sale or displays any cocaine spoon, marihuana pipe, hashish pipe or other drug- *1032 related paraphernalia is guilty of a class A misdemeanor. (§§ E22-2.0, E22-3.0.) The ordinance is based upon the Model State Drug Paraphernalia Act drafted by the Department of Justice.
Plaintiff Marguerite Gless is the owner of “Out of Our Drawers” and plaintiff Mark Safa owns “The Village Smoke Shop” both located in Greenwich Village. Plaintiffs *1033 challenge the ordinance on a number of constitutional grounds. First, they allege that the ordinance is preempted by New York State law, in particular article 39 of the General Business Law (L 1980, ch 811), sections 220.45 and 220.50 of the Penal Law and subdivision 3 of section 3387 of the Public Health Law. Plaintiffs contend that these State statutes evidence an intent on the part of the State Legislature to occupy the entire field of drug paraphernalia regulation and thereby pre-empt local legislation in that area.
Plaintiffs also assert that the ordinance is void for vagueness and therefore violative of section 6 of article I of the New York State Constitution and the due process clause of the Fourteenth Amendment to the United States Constitution. The ordinance is also challenged on the ground that it infringes upon protected speech in violation of section 8 of article I of the New York State Constitution and the First and Fourteenth Amendments to the United States Constitution. Plaintiffs also assert an equal protection argument and, finally, contend that the ordinance is not rationally related to a legitimate government purpose.
In addressing the first argument, that Local Law No. 23 is pre-empted by the New York State regulatory scheme, the court notes that article IX (§ 2, subd [c], par [ii], cl [10]) of the New York State Constitution, article 2 (§ 10, subd 1, par [ii], cl a, subcl [12]) of the Municipal Home Rule Law and section 27 of the New York City Charter vest the New York City Council with broad power to provide by local law for the good government of the cities and the preservation and promotion of the health, safety and general welfare of its inhabitants. This power may, however, be limited by the enactment of State police power legislation. When the State has evidenced a desire to occupy the entire field to the exclusion of local law, a municipality is powerless to act. (Wholesale Laundry Bd. of Trade v City of New York, 17 AD2d 327, affd 12 NY2d 998.) That an ordinance has some connection with a subject upon which a State statute exists does not automatically vitiate it on that account (People v New York Trap Rock Corp., 57 NY2d 371, 378, citing People v Judiz, 38 NY2d 529, 531-532).
*1034 If the Legislature of the State is found to have intended to pre-empt the field of drug paraphernalia in its police power then article IX (§ 2, subd [c], par [ii]) of the New York State Constitution prevents the City of New York from the passage of a local law inconsistent with the State statute. (People v De Jesus, 54 NY2d 465.)
The Court of Appeals recently considered the doctrine of pre-emption in Consolidated Edison Co. v Town of Red Hook (60 NY2d 99).
There Con Edison announced its intention to build an electric generating plant within the Town of Red Hook. The town responded by enacting an ordinance which required Con Edison to procure a license from the town before undertaking a site study. The court held that the Red Hook local law was pre-empted by article VIII of the Public Service Law which relates to the “Siting of Major Steam Electric Generating Facilities”.
The court recognized two infirmities requiring invalidation of the local law. First it imposed an additional layer of regulation in an area where the Legislature had evidenced its intent to pre-empt the field of regulation. Secondly, the local law was found to be inconsistent with the Public Service Law. (Supra, p 105.) Each deficiency was sufficient to require the court to invalidate the local law (Myerson v Lentini Bros. Moving & Stor. Co., 33 NY2d 250, 255).
Concerning the first infirmity the court stated that intent by the Legislature to pre-empt need not be express, it being enough that the Legislature has impliedly evinced its desire to do so. (60 NY2d, at p 105, citing People v New York Trap Rock Corp., 57 NY2d 371, 378, supra; Monroe-Livingston Sanitary Landfill v Town of Caledonia, 51 NY2d 679, 683; People v Cook, 34 NY2d 100,109.) Further, the “desire to pre-empt may be implied from a declaration of State policy by the Legislature (Robin v Incorporated Vil. of Hempstead, 30 NY2d 347, 350-351) or from the fact that the Legislature has enacted a comprehensive and detailed regulatory scheme in a particular area.” (Ibid.)
Both factors implying a desire to pre-empt were present in Consolidated Edison Co. v Town of Red Hook (supra).
Here there is concededly no express intent on the part of the Legislature to pre-empt localities from enacting drug *1035 paraphernalia legislation. However, plaintiffs argue that a desire to pre-empt can be implied from both the declaration of State policy in this area and the comprehensive and detailed regulatory scheme provided by article 39 of the General Business Law and sections 220.45 and 220.50 of the Penal Law and subdivision 3 of section 3387 of the Public Health Law.
With regard to whether a desire to pre-empt can be implied from declarations of State policy, plaintiffs point to statements contained in the legislative history of article 39 of the General Business Law (L 1980, chs 811, 812). The drafters of the legislation noted that local communities had passed ordinances relating to drug paraphernalia. However, no further mention of the ordinances was made and there is no statement that article 39 was enacted to complement or supplement local acts. Plaintiffs urge that it can be inferred from the “brushing aside” of these local ordinances that the Legislature intended to pre-empt local legislation in this area.
The City on the other hand directs the court’s attention to a letter from the Minority Whip of the New York State Senate to the Governor of New York wherein the Senator urges that the measure would be “one more weapon needed to wage an all out attack on this most serious problem. In dealing with the well being of our youth, we cannot overlook any measure which can be useful to assure their safety”. (Bill Jacket, L 1980, ch 811; emphasis added.)
Defendants also contend that the statement of legislative intent attached to the enactment of article 39 (L 1980, ch 811, amd L 1980, ch 812) indicates a determination by the Legislature that the sale of drug paraphernalia is a legitimate concern of all levels of government and that control of the industry can best be accomplished through a concerted effort on the part of State arid local governments. The statement provides: “interested community groups have increasingly begun to demand governmental action to deal with the drug paraphernalia industry. All levels of government have been contacted, and in response, a number of localities have passed ordinances. To effectively combat this problem, the legislature declares it the policy *1036 of the state to prohibit the sale of drug paraphernalia.” (L 1980, ch 811, § 1.)
The court does not infer from these declarations by the Legislature an intent to occupy the entire area of drug paraphernalia regulation and pre-empt local legislation. The legislative history of article 39 indicates a concern on the State level with the growth of so-called head shops and the potential harm to the youth of New York State. However, the court does not infer from the legislative declaration that localities were prohibited from going further than the civil penalties contained in article 39 and enact an ordinance criminal in nature in an attempt to curtail the operation of head shops. The declarations indicate to the court a desire that there be at least a State-wide statute with civil penalties aimed at head shops and a recognition that localities may also wish to regulate the operation of head shops.
Plaintiffs’ arguments that when one considers the criminal penalties included in sections 220.45 and 220.50 of the Penal Law and subdivision 3 of section 3387 of the Public Health Law, one can infer an intent to preclude criminal penalties at the local level is without merit since these statutes are not directed solely at head shops as article 39 and the City’s Local Law No. 23 are.
This is to be contrasted with the legislative declarations in Consolidated Edison Co. v Town of Red Hook (supra) which the court found implied an intent to occupy the entire field. There the Legislature noted that the existing un-co-ordinated local regulations had resulted in construction delays and that there was a need for the State to control proposed siting. (Id., p 105; L 1972, ch 385, § 1.) Also, the court pointed out (p 105) that Governor Rockefeller recognized that “ ‘the establishment of a unified certificating procedure under the jurisdiction of the new State Board’ ” was to replace the current un-co-ordinated welter of approvals, procedures and agencies that have virtually paralyzed the construction of needed power plants. (McKinney’s Session Laws of NY, 1972, p 3391.)
The declarations in the instant case are clearly not indicative of a desire to pre-empt when compared with those in Consolidated Edison (supra).
*1037 The second method for implying a desire to pre-empt local legislation is from the presence of a “comprehensive and detailed regulatory scheme in a particular area” (Consolidated Edison Co. v Town of Red Hook, supra, p 105, citing People v De Jesus, 54 NY2d 465, 469, supra).
Plaintiffs argue that article 39 of the General Business Law, sections 220.45 and 220.50 of the Penal Law and subdivision 3 of section 3387 of the Public Health Law constitute such a regulatory scheme in the area of drug paraphernalia.
A review of the statutes fails to disclose a detailed and comprehensive scheme. Section 3381 et seq. of the Public Health Law is directed at hypodermic needles and syringes, section 220.45 of the Penal Law also concerns hypodermic needles and syringes and section 220.50 makes unlawful possession or sale of diluents, dilutants or adulterants and materials suitable for packaging of narcotic drugs.
While these provisions regulate items also contained in Local Law No. 23, the City ordinance is substantially more detailed than the Penal Law and Public Health Law and is aimed directly at head shops. Moreover, prior to the enactment of article 39, a local government contemplating the enactment of a model act type ordinance requested the opinion of the State Comptroller on the question of preemption by the Public Health Law and Penal Law provisions and the Comptroller advised that there was no preemption.
Plaintiffs nevertheless argue that the subsequent enactment of article 39 makes clear the Legislature’s intent to provide a comprehensive and detailed scheme made up of article 39, the Penal Law and Public Health Law. This court disagrees with this position. Rather, they represent a piecemeal, fragmented approach to the regulation of drug paraphernalia rather than the sweeping, comprehensive treatment from which pre-emption might be inferred.
Significantly, article 39 is limited to those items set forth in section 850 of the General Business Law. Local Law No. 23 goes further, regulating all equipment products and materials of any kind “which are used, intended for use, or *1038 designed for use with controlled substances” and attaches criminal penalties rather than the civil enforcement remedies provided in article 39.
Thus, article 39, sections 220.45 and 220.50 of the Penal Law and subdivision 3 of section 3387 of the Public Health Law fail to create a comprehensive regulatory scheme providing a full range of enforcement remedies for all drug-related paraphernalia.
The court is cognizant of the decisions reaching a contrary conclusion. In Dougal v County of Suffolk (Supreme Ct, Suffolk County, Dec. 3,1982), the court found that two local ordinances based upon the model act and virtually identical to Local Law No. 23 were pre-empted by the State scheme. The court held that the differences between the State and local laws were “irreconcilable” and declared the local law pre-empted. (Dougal v County of Suffolk, supra.)
Similarly, in Hoetzer v County of Erie (497 F Supp 1207 [US Dist Ct, WDNY]) the court found that the State Legislature pre-empted the field of drug paraphernalia regulation. The court however found that the local law, again based upon the model act, did not conflict with the State scheme (Hoetzer v County of Erie, supra, at p 1216). The Hoetzer court interpreted the brushing aside of the existence of local ordinances by the Legislature as indicative of an intent to pre-empt local legislation in that area.
A contrary conclusion was reached in Brache v County of Westchester (507 F Supp 566 [US Dist Ct, SONY], revd on other grounds 658 F2d 47, cert den 455 US 1005). There, the court interpreted the brushing aside of local laws as indicating an intent to supplement the existing criminal sanctions existing on the local level. The court stated that it did not follow that the Legislature had intended to preempt local governments from attempting to impose constitutional criminal sanctions as the drafters of the model act encouraged them to do.
Plaintiffs urge that Brache v County of Westchester (supra) is of little precedential value since the issue of preemption was not briefed or urged by either party and that the District Court was anxious to reach the vagueness issue, the ground upon which it found the ordinance consti *1039 tutionally infirm. This holding was subsequently reversed on standing grounds (658 F2d 47, supra).
This court agrees with the reasoning of Brache (supra) and therefore it declines to infer a desire to pre-empt local legislation from the declarations of the Legislature or the nature of the State regulatory scheme in view of the guidelines set forth by a subsequent decision of the New York Court of Appeals. (Consolidated Edison Co. v Town of Red Hook, supra.)
A local law may still be voided, notwithstanding the absence of an express or implied declaration of desire to pre-empt, if it is inconsistent with a State enactment. (Consolidated Edison Co. v Town of Red Hook, supra, p 108; People v De Jesus, 54 NY2d 465, 468, supra.)
Plaintiffs assert that Local Law No. 23 is inconsistent with the State regulatory scheme as it criminalizes the sale or display of many objects punished only by civil penalties in the State scheme.
There need not be an express conflict between the State and local laws (Consolidated Edison Co. v Town of Red Hook, supra, p 108; People v De Jesus, supra, p 468). Thus it has been held that a local law should be struck down as inconsistent with State law when the local law permits an act which ha°s been specifically prohibited by State law (Council for Owner Occupied Housing v Koch, 119 Misc 2d 241, 245; see, also, Wholesale Laundry Bd. of Trade v City of New York, 17 AD2d 327, 329-330, affd 12 NY2d 998, supra; Matter of Kress & Co. v Department of Health, 283 NY 55; People v Cook, 34 NY2d 100, supra).
Local Law No. 23 survives attack on this ground as well. The existence of criminal rather than civil penalties does not render the ordinance inconsistent with State law. Mere differences between State and local laws do not render them inconsistent. As explained in Town of Clifton Park v C.P. Enterprises (45 AD2d 96, 98): “To define the word ‘inconsistent’ narrowly as meaning merely ‘different’ would vitiate the flexibility of home rule as enunciated by the Legislature and the executive branch in enacting the Municipal Home Rule Law”.
People v Lewis (295 NY 42) is also instructive here. In that case the court held that the differences between the *1040 State and local laws were not of such character as to render them inconsistent. The local law was found to merely supplement the State law by providing for heavier penalties for black-market transactions in New York City (id., at p 51).
Based upon the foregoing the court finds Local Law No. 23 a valid exercise of the City’s police power to provide by local law for the good government of the City and the preservation and promotion of the health, safety and general welfare of its inhabitants. (Municipal Home Rule Law, art 2, § 10, subd 1, par [ii], cl a, subcl [12]; NY Const, art IX, § 2, subd c, par [ii], cl [10]; NY City Charter, § 27.) The ordinance is neither pre-empted by the State law nor inconsistent with it (Consolidated Edison Co. v Town of Red Hook, supra).
Plaintiffs also assert that Local Law No. 23 is vague and therefore in violation of the due process clause pf the New York State Constitution (art I, § 6) and the Fourteenth Amendment to the United States Constitution.
Plaintiffs assert that Local Law No. 23 is impermissibly vague by failing to give adequate warning of what is proscribed and promoting arbitrary and discriminatory enforcement.
Drug paraphernalia laws similar to this ordinance have frequently been attacked on vagueness grounds. When an enactment is vague it fails to give fair notice of what conduct is proscribed so that persons of ordinary intelligence are unable to conform their conduct to its requirements or it creates the possibility of arbitrary and discriminatory enforcement by vesting too much discretion with enforcement officials. (Grayned v City of Rockford, 408 US 104.)
Thus, drug paraphernalia statutes have been challenged both for their failure to adequately describe what types of drug paraphernalia are banned by their terms and also for vesting unfettered discretion in enforcement officials to determine what types of sales or use of drug paraphernalia items are proscribed.
Drug paraphernalia have been divided into two categories, “single-use items — those with no possible function other than the preparation or ingestion of drugs — such as *1041 free-base kits, cocaine kits, toke-o-matic bong hitters, and marihuana test kits; and multiuse items, such as rolling papers and pipes which concededly have other legal uses” (Franza v Carey, 115 Misc 2d 882, 883; Brache v County of Westchester, 658 F2d 47, supra).
The first question posed by plaintiffs’ vagueness challenge is whether and to what extent plaintiffs have standing to assert the challenge. In this regard, defendants rely upon the recent case of Hoffman Estates v Flipside, Hoffman Estates (455 US 489). There the court held (p 497) that in a pre-enforcement facial challenge the court’s inquiry is whether the ordinance is impermissibly vague in all of its applications. Here the distinction between multiuse and single-use items is important. Under the holding of Brache v County of Westchester (supra) a challenge , to the facial validity of a model act type statute by a person who sells single-use items must fail since those items are clearly proscribed by the statute. A seller of single-use items has no standing to challenge the facial validity of the statute if applied to the sale of multiuse items. As long as the person is selling single-use items to which the ordinance may validly be applied, a facial vagueness challenge must fail. In this situation an actual enforcement of the ordinance would be necessary before the validity of the statute to multiuse items could be heard.
In Brache v County of Westchester (supra, p 52), the court held that the ordinance had a core meaning that gave fair notice of its application to the sale of single-use items and since it had one valid application to plaintiffs’ conduct the court was without authority to adjudicate their claim that the ordinance was invalid as applied to the sale of multiuse items.
Thus in Franza v Carey (115 Misc 2d 882, supra) the plaintiffs ceased selling single-use items to avoid these standing problems. There, the court held that under the United States and New York Constitutions the New York State drug paraphernalia statute (General Business Law, art 39) was not facially vague as to single-use items. The Franza court (p 885) held that article 39 provided fair warning as to certain prohibited items and therefore could not be struck on facial vagueness grounds. The court *1042 however did not determine the validity of the statute when applied to the sale of multiuse items. A trial was ordered on this issue.
This court holds that under the authority of Hoffman Estates v Flipside, Hoffman Estates (455 US 489, supra) and Brache v County of Westchester (658 F2d 47, supra), since plaintiffs do not sell single-use items they have standing to challenge the facial validity of Local Law No. 23 as to multiuse items. The test in a pre-enforcement challenge to the facial validity of an enactment is whether the law gives fair notice of what conduct is proscribed and sufficiently defines the proscribed conduct so that enforcement officials are not delegated unfettered discretion.[2] (Grayned v City of Rockford, supra.) The test is no different under the New York State Constitution (People v Pagnotta, 25 NY2d 333; People v Ferber, 96 Misc 2d 669). The statute has a sufficient core meaning defining what constitutes drug paraphernalia under its terms and what conduct violates the ordinance so as to withstand facial attack. (Smith v Goguen, 415 US 566, 578.) This court, as the court in Franza v Carey (115 Misc 2d 882), interprets the language in the definitions of drug paraphernalia “used, intended for use, or designed for use” (Local Laws, 1983, No. 23 of City of New York, § E22-1.0, subd a) as attaching a scienter requirement to each category of offender, the manufacturer, distributor and user under the model act. Thus it is not the intent of the prospective purchaser that is important, but the subjective intent of the alleged violator. (Franza v Carey, supra; see, also, Town Tobacconist v Kimmelman, 94 NJ 85, 462 A2d 573; Levas & Levas v Village of Antioch, 684 F2d 446; Hoffman Estates v Flip-side, Hoffman Estates, supra.)
Thus this court is in accord with courts holding that the interaction of the definitional section of model act type ordinances and the intent requirement allays vagueness (Levas & Levas v Village of Antioch, supra).
Accordingly, defendants have demonstrated that Local Law No. 23 is not impermissibly vague on its face for failure to provide fair warning of the conduct proscribed.
*1043 Defendants assert that the court’s vagueness inquiry should end here and that a determination of whether Local Law No. 23 is sufficiently clear for the guidance of law enforcement authorities so as to deter arbitrary and discriminatory enforcement must await actual enforcement of the ordinance against plaintiffs. Defendants further argue that such a determination at this stage would necessarily embroil the court in a speculative and hypothetical evaluation of potential enforcement patterns. In this regard the City relies upon Hoffman Estates v Flipside, Hoffman Estates (supra, p 504, n 21), wherein it was stated that possible arbitrary enforcement “is of no due process significance unless [it represents an actual] prosecution”. Defendants also rely on the enforcement memorandum of the New York City Police Department.
This court interprets Hoffman Estates (supra) to permit only a facial inquiry as to the possibility of arbitrary and discriminatory enforcement in this pre-enforcement setting. The declaratory judgment action under CPLR 3001 is the proper vehicle for obtaining a determination on this issue as to the plaintiffs’ sale of multiuse items. (Franza v Carey, supra; Subcontractors Trade Assn. v Koch, 96 AD2d 774; New York Public Interest Research Group v Carey, 42 NY2d 527, 530.) However, the facial validity of Local Law No. 23 on this issue is a question of law which can be determined from the terms of the ordinance and the enforcement guidelines of the police department.[3] Accordingly, the court may render a declaration on this question based upon the papers before it (CPLR 3001). A trial on the facial validity of the ordinance is therefore unnecessary.
The test in such a pre-enforcement facial challenge is whether the enactment is “sufficiently clear for the guidance of law enforcement officials” so as to deter arbitrary and discriminatory enforcement. (Grayned v City of Rockford, supra; Town Tobacconist v Kimmelman, supra.)
Given the court’s construction of the ordinances so that the words “used, intended for use, or designed for use” in *1044 the definition of drug paraphernalia require a subjective intent of the alleged violator and the section E22-2.0 requirement that the violator knowingly sell items that constitute drug paraphernalia as defined in Local Law No. 23, the ordinance is sufficiently clear on its face to deter arbitrary and discriminatory enforcement of the ordinance against retailers such as plaintiffs. Thus, law enforcement officials are given sufficient guidance by the terms of the ordinance itself to deter the possibility of arbitrary and discriminatory enforcement. Again the interaction of the definitional section with the intent requirement allays facial vagueness (Levas & Levas v Village of Antioch, supra).
As the court stated in Town Tobacconist v Kimmelman (94 NJ 85, 462 A2d 573, 593, supra), when faced with a challenge to the facial validity of a drug paraphernalia ordinance “That there may be a borderline area where application of the law is vague does not render the entire statute void for vagueness unless that borderline area is so broad that it covers practically the entire statute.” The court (p_, p 593) then quoted from United States v Petrillo (322 US 1, 7): “ That there may be marginal cases in which it is difficult to define the side of the line on which a particular fact situation falls is not sufficient reason to hold the language too vague to define a criminal offense * * * [T]he Constitution does not require impossible standards.’ ”
Accordingly the court holds that Local Law No. 23 is not unconstitutionally vague under the United States and New York State Constitutions. It gives adequate fair warning of the conduct proscribed and is sufficiently clear for law enforcement purposes to deter arbitrary and discriminatory enforcement.
Plaintiffs finally argue that Local Law No. 23 is unconstitutional in infringing upon protected speech, in violation of the First Amendment to the United States Constitution, in depriving plaintiffs of equal protection of the law, in not being rationally related to a legitimate governmental objective thus violating the due process clause and in constituting a bill of attainder.
*1045 The First Amendment claim has consistently been rejected by courts. (Brache v County of Westchester, supra; Town Tobacconist v Kimmelman, supra; Hoffman Estates v Flipside, Hoffman Estates, supra.) Here also the court finds that Local Law No. 23 does not infringe protected speech.
Similarly plaintiffs’ bill of attainder, due process and equal protection claims lack merit (Hoffman Estates v Flipside, Hoffman Estates, supra; Mid-Atlantic Accessories Trade Assn. v State of Maryland, 500 F Supp 834; Brache v County of Westchester, 507 F Supp 566, supra).
Accordingly, the court declares that Local Law No. 23 is not pre-empted and is valid and enforceable, that Local Law No. 23 is constitutional as it does not violate the due process and equal protection clauses nor the First Amendment and it does not constitute a bill of attainder.
Based upon the foregoing, defendants’ cross motion for summary judgment is granted. Plaintiffs’ motion for a preliminary injunction and for summary judgment is denied.

. Local Law No. 23 of 1983 of the City of New York provides as follows:
“Section one Chapter 22 of the administrative code of the City of New York, is hereby amended by adding thereto a new Title E to follow Title D to read as follows:
“Sec. E22-1.0. Sale of drug paraphernalia prohibited. — a. Definitions. The term ‘drug paraphernalia’ means all equipment products and materials of any kind which are used, intended for use, or designed for use, in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of the laws of the State of New York. It includes, but is not limited to:
“1. Kits used, intended for use, or designed for use in planting, propagating, cultivating, growing or harvesting of any species of plant which is a controlled substance or from which a controlled substance can be derived;
“2. Kits used, intended for use, or designed for use in manufacturing, compounding, converting, producing, processing, or preparing controlled substances;
“3. Isomerization devices used, intended for use, or designed for use in increasing the potency of any species of plant which is a controlled substance;
“4. Testing equipment used, intended for use, or designed for use in identifying or in analyzing "the strength, effectiveness of purity of controlled substances;
“5. Scales and balances used, intended for use, or designed for use in weighing or measuring controlled substances;
“6. Diluents and adulterants, such as quinine hydrochloride, mannitol, mannite, dextrose and lactose, used, intended for use, or designated for use in cutting condiment substances;
“7. Separation gins and sifters used, intended for use, or designed for use in removing twigs and seeds from, or in otherwise cleaning or refining marihuana;
“8. Blenders, bowls, containers, spoons and mixing devises used, intended for use, or designed for use in compounding controlled substances;
“9. Capsules, balloons, envelopes and other containers used, intended for use, or designed for use in packaging small quantities of controlled substances;
“10. Containers and other objects used, intended for use, or designed for use in storing or concealing controlled substances;
“11. Hypodermic syringes, needles and other objects used, intended for use, or designed for use in parenterally injected controlled substances into the human body;
“12. Objects used, intended for use, or designed for use in ingesting, inhaling, or otherwise introduce marihuana, cocaine, hashish, or hashish oil into the human body, such as:
“a. Metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls;
“b. Water pipes;
“c. Carburetion tubes and devices; .
“d. Smoking and carburetion masks;
“e. Roach clips, meaning objects used to hold burning material such as marihuana cigarette, that has become too small or too short to be held in the hand;
“f. Miniature cocaine spoons and cocaine vials;
“g. Chamber pipes;
“h. Carburetor pipes;
“i. Electric pipes;
“j. Air-driven pipes;
*1032 “k. Chillums;
“1. Bongs;
“m. Ice pipes or chillers.
“13. ‘Cocaine Spoon’: A spoon with a bowl so small that the primary use for which it is reasonably adopted or designed is to hold or administer cocaine, and which is so small as to be unsuited for the typical, lawful uses of a spoon. A cocaine spoon may or may not be labeled as a ‘cocaine’ spoon or ‘coke’ spoon;
“14. ‘Marihuana or Hashish Pipe': A pipe characterized by a bowl which is so small that the primary use for which it is reasonably adopted or designed is the smoking of marihuana or hashish, rather than lawful smoking tobacco, and which may or may not be equipped with a screen. In determining whether an object is drug paraphernalia, a court or other authority should consider, in addition to all other logically relevant factors, the following:
“a. Statements by an owner or by anyone in control of the object concerning its use;
“b. Prior convictions, if any, of an owner, or of anyone in control of the object, under any State or Federal law relating to any controlled substance;
“c. The proximity of the object, in time and space, to a direct violation of this Act;
“d. The proximity of the object to controlled substances;
“e. The existence of any residue of controlled substances on the object; •
“f. Direct or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons who he knows, or should reasonably know, intend to use the object to facilitate a violation of this Act; the innocence of an owner, or of anyone in control of the object, as the direct violation of this Act should not prevent a finding that the object is intended for use, or designed for use as drug paraphernalia;
“g. Instructions, oral or written, provided with the object concerning its use;
“h. Descriptive materials accompanying the object which explain or depict its use;
“i. National and local advertising concerning its use;
“j. The manner in which the object is displayed for sale;
“k. Whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community such as licensed distributor or dealer of tobacco products;
“1. Direct or circumstantial evidence of the ratio of sales of the objects to the total sales of the business enterprise;
“m. The existence and scope of legitimate uses for the objects in the community;
“n. Expert testimony concerning its use.
“Sec. E22-2.0. Sale and display of drug accessories. — It shall be a violation of this section for any merchant or other person to knowingly sell, offer for sale, or display any cocaine spoon, marihuana pipe, hashish pipe, or any other drug-related paraphernalia.
“Sec. E22-3.0. Penalties. — Notwithstanding any provision in New York City Charter, the New York City Administrative Code or any other Local Law, a person who violates any provision of this article is guilty of a misdemeanor punishable by a fine of less than 1,000 dollars or a jail term of less than one year or both.
“Sec. 2. Severability. — If any clause, sentence, paragraph or part of this Local Law shall be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair or invalidate the remainder thereof, but shall be confined in its operation to the clause, sentence, paragraph, section or part thereof, but shall be confined in its operation to the clause, sentence, paragraph, section or part thereof directly involved in the controversy and in which such judgment shall have been rendered. *1033 “Sec. 3. This local law shall take effect on the thirtieth day after it shall become a law.”

. If the ordinance had infringed constitutionally protected conduct it would be subject to a more stringent test. However, this ordinance does not reach any constitutionally protected conduct (Hoffman Estates v Flipside, Hoffman Estates, 455 US 489, 499).

. There is authority for the proposition that when entertaining a vagueness challenge a court may consider any enforcement guidelines issued by the agency charged with enforcement of the enactment (Hoffman Estates v Flipside, Hoffman Estates, supra, at p 494, n 5). However, this principle does not abrogate the rule that administrative guidelines cannot rehabilitate an enactment unconstitutionally vague.